PRIEWE, Appellant, vs. FITZSIMONS & CONNELL COMPANY and others, Respondents.

*March 24—April 17, 1903.*

*Appeal: Inconsistent findings: Riparian owners: Restoring level of lake by dam: Nuisances: Abatement.*

1. Where there is a finding inconsistent with the judgment in an action, and other findings by themselves sufficient to warrant such judgment, it should be reversed unless found to be clearly right upon the evidence.

2. It being settled that a riparian proprietor as a matter of right may dam up the outlet of a lake so as to raise the level of the water therein to where it was at a former time before disturbed by unlawful interference by drainage operations; a finding that a dam constructed by such proprietor for that purpose will cause the water of the lake to rise higher than before such interference, and one that the level of the lake cannot be raised to its former condition without obstructing the outlet of the lake substantially as by the construction of such dam, are manifestly inconsistent, and no judgment involving the legality of such obstruction can be based thereon.

3. When a person has a legal or equitable right to do a particular thing, requiring in the enjoyment thereof the exercise of judgment, and he proceeds with due care in that regard, and the conditions are such that a mistake of judgment on his part might create an actionable private nuisance, but the indications are clear that such mistake will probably be promptly remedied by him upon the same developing, and private parties, in mere anticipation that such person's operations may create such a nuisance injurious to them, prevent him from a fair exercise of his judgment in the matter by obstructing his proceeding at all, they are wrongdoers and may be dealt with at law or in equity as the case may require for the efficient protection of such right.

4. A person, in mere anticipation that an actionable private nuisance injurious to him may result from the operations of another upon his own premises or upon premises where he may lawfully be for the purposes of such operations, cannot maintain an action at law or in equity against such person in respect thereto.

5. Where there is no right of action to restrain or remove or to obtain damages in respect to a nuisance created by another, there is no right to prevent, restrain or remove such nuisance without judicial proceedings.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Reversed.*

Muskego Lake, in its natural state and as it existed before artificially changed as hereinafter stated, was a meandered body of navigable water covering a considerable extent of country in Waukesha county, Wisconsin. The movement of the water thereof was toward the southerly side of the lake,

where there was an outlet through which the water flowed, and thence in a narrow, sluggish stream for some over a mile to and into Wind Lake, in Racine county. Plaintiff, since prior to 1885, has been the owner of a tract of land bordering on Muskego Lake or the meander line thereof, to wit, lot 4, section 14, town 5, range 20, containing sixty-six and one half acres. The natural frontage of such land upon the lake was about 100 rods. The riparian rights of the plaintiff appurtenant to his land were of considerable value. Prior to 1890 a canal was legally excavated from a point about 1,100 feet north of the southeasterly shore of the lake to Wind Lake, of sufficient width and depth to drain the water of the former lake into the basin of the latter, reducing the level of the water of the former about four and one half feet. The canal in the bed of the lake was planned eighteen feet wide at the bottom and thirty-four feet wide at the top, but was made wider. It was constructed under legislative authority by commissioners duly appointed for that purpose, and at the cost of the landowners benefited by the drainage, including the plaintiff. The result of such construction as to plaintiff's premises was to uncover a strip of land in front thereof from fifty to one hundred feet wide, but without materially impairing the value of his riparian rights. He became a party to the drainage work done by the commissioners by accepting the benefits thereof and paying the assessment imposed upon his property by reason of such benefits.

Between April 17, 1892, and some time in 1894, the Wisconsin State Land & Improvement Company, a corporation acting under colorable authority from the state of Wisconsin, prosecuted a scheme for wholly draining said lake, and in so doing deepened and greatly changed the character of the canal in the bed of the lake, and also deepened it throughout its entire length between Muskego Lake and Wind Lake, and made other physical changes sufficient, in the whole, to reduce the level of the former lake about four feet, greatly

damaging plaintiff's premises. In 1894, while the said second drainage was in progress, plaintiff commenced an action in the circuit court for Milwaukee county against the improvement company to restrain it from completing its scheme of drainage and to compel it to restore the lake to the condition it was in prior to the commencement of its work. Such proceedings were duly had in such action that March 25, 1898, judgment was rendered in favor of plaintiff, deciding that the legislative enactments to which the improvement company referred for its authority to drain the lake were unconstitutional and void, and that plaintiff was entitled to have the lake restored to the condition it was in prior to the company's operations, and requiring such company to do so within thirty days, and providing that if it neglected to do so, plaintiff might himself accomplish such result at its cost. This language was used in the judgment which was rendered:

"Plaintiff . . . is entitled to have the canal constituting the outlet of Muskego Lake filled up and restored to the condition in which it was left after the completion of the work of drainage under said ch. 169, Laws of 1887, and . . . to have the waters of Muskego Lake restored to the level at which the same stood at and after the completion of such drainage and prior to the doing of any work by the defendant."

"The defendant . . . is commanded, ordered and required to fill up the ditches dug by it in the bed of Muskego Lake and to fill up and restore the canal or outlet connecting Muskego Lake with Wind Lake to the condition in which such canal was before the defendant did any work therein *so as to permit the water to remain and return to and refill the lake to the level at which it stood prior to the . . . time that the defendant did any work of drainage therein.* And said defendant is ordered, adjudged and decreed to restore and to refill the canal leading from Muskego Lake to Wind Lake within thirty days of the service of notice of entry of the judgment herein . . . so that said canal . . . when so filled and restored shall not average more than eight feet in depth nor more than eighteen feet in width

at the bottom, and not more than thirty-four feet in width at the top. But in case said defendant does not begin work of refilling and restoring said canal leading from Muskego Lake to Wind Lake within seven days from and after the service of notice of entry of this judgment upon it, thereupon the plaintiff, at his option, may cause said work of refilling and restoring said canal to be done as required of the defendant, and the plaintiff's expense and cost of doing said work shall be paid by the defendant."

The improvement company appealed from such judgment to this court, where it was construed by so restraining the literal sense thereof as to require only such filling up of excavations between the two lakes, or in Muskego Lake, as might be necessary to restore the natural condition of the water of the latter lake to that existing before the second drainage work was commenced.    103 Wis. 537, 553, 79 N. W. 780.  Such construction, or modification, it may well be called, was deemed necessary, as indicated in the opinion of this court, because it was seen that if the judgment were taken literally, it would bear with unnecessary harshness upon the improvement company and probably result in the plaintiff not obtaining any relief whatever as a result of the litigation.  It was in effect pointed out that the objective point sought, and which plaintiff was entitled to secure, was the restoration of the level of the lake to the condition it was in before being disturbed by the improvement company under its pretended authority, and that if it were required to do that by restoring the canal from Muskego Lake to Wind Lake to its former condition, and to do that by the exact means mentioned in the judgment, taking the same in its strict literal sense, the expense would probably be so great that the judgment could not be enforced for want of financial responsibility of the defendant company.  It was easily seen that in such event plaintiff could not bear the expense of doing the work himself.  Since it appeared that such change could be made in the canal in Muskego Lake bed as would ac-

complish the object of the decree at trifling expense, as compared with the cost of accomplishing that result by a literal compliance with the court's decree, without affecting the substantial rights of any one not a party to the litigation, the decree was construed, or modified, accordingly. The improvement company failed to comply with the judgment as affirmed by this court, whereupon plaintiff built a dam across the canal about 700 feet northerly from the old shore line, making the dam sufficiently high, in his judgment, to secure that which the court had decreed was his right. Within a day or two after the dam was completed, the defendants, except the *Fitzsimons & Connell Company* and *William Buttenhagen,* concerting together, removed a large portion of the dam from the crest down to several inches below the location of the bottom of the old canal. The persons concerned in the transaction, by their conduct on the occasion thereof and their attitude thereafter, gave plaintiff reasonable ground to believe that if he attempted to rebuild the dam it would be destroyed as before, and that he could only protect his right in the matter by applying to the equity jurisdiction of the court to compel the defendants to restore the result of his work to the condition in which they found it, and to respond in damages for the loss caused to him by their operations and to restrain them from further interfering with his efforts to restore the former lake level. This suit was commenced accordingly.

The complaint contained appropriate allegations to show all the matters heretofore stated, except the construction of the judgment in the former litigation. The prayer of the complaint was, first, that defendants be required to restore the canal to the condition it was placed in by plaintiff's work; second, that defendants be enjoined from interfering with plaintiff's future operations to restore the lake to its condition prior to the drainage work done by the Wisconsin State Land & Improvement Company; third, that plaintiff have

judgment for the damages suffered by him from the wrongful conduct of the defendants complained of; fourth, that plaintiff have such further relief as the court might deem proper, and recover his costs of the litigation.

The defendants answered, justifying their conduct by alleging that they were specially interested in maintaining the canal in the condition it was in prior to the second drainage, and that all they did was done in good faith to prevent plaintiff from disturbing such condition.

The evidence on the part of plaintiff tended to show that he had no purpose in constructing the dam across the canal, to make the same higher than was necessary to obviate the effect upon the level of the lake, of the second drainage, and that he left the crest of the dam several inches lower than the proper level of the lake, and twenty-two feet wide. The evidence was undisputed that the defendants peaceably destroyed the dam for about ten feet on the crest, to a point about seven inches below the bottom of the old canal; that they insisted openly that plaintiff had no right to fill up any portion of the canal above the location of such bottom. There was evidence tending to show that the old canal was incorporated into the new one and that defendants approved thereof and acquiesced therein; and the evidence was undisputed and it was established as a fact, that when they destroyed plaintiff's work, the level of the water in the lake was considerably below where it was before the second drainage. Whether the plaintiff's dam, had it been left undisturbed, would have raised the level of the lake higher than where it was before the canal was deepened, was in dispute, plaintiff contending in good faith that it would not. There was also evidence tending to show, in one view thereof, that the dam was too high, while there was other evidence tending to prove that though the crest of the dam was some two feet and a half higher than the bottom of the old canal, by reason of the fall from the crest of the dam to the tail water below,

water would be discharged to the lower level, when high enough to flow over the dam, in a sufficient volume to prevent the level of the lake being made higher than the same was prior to 1892. There was no evidence produced, as to the amount of water required to be discharged from the lake in order to regulate the level thereof as plaintiff was entitled to do, or what length upon the crest of a dam twenty-two feet wide, the width of the crest of plaintiff's dam, it would take to pass such amount.

The court decided the issues in effect as follows:

(1) This related merely to an amendment of the answer.

(2) There is no evidence connecting defendants *Fitzsimons & Connell Company* and *William Buttenhagen* with the alleged wrongdoing, and plaintiff's counsel so conceded the fact to be at the close of the evidence.

(3) The allegations of the complaint relating to the first and second drainage, and the suit by plaintiff to enjoin the latter and compel the restoration of the lake to its condition prior to such latter drainage, and the result of such suit, are true.

(4) The first drainage work was done under and pursuant to legal authority and all of the defendants, except the *Fitzsimons & Connell Company* and *William Buttenhagen,* are specially interested in maintaining the same.

(5) There was a second drainage of Muskego Lake, substantially as alleged in the complaint, but in judicial proceedings, as there alleged, the same was held to be without authority of law, and the excavations made in effecting such drainage should be filled up by the party responsible therefor.

(6) Plaintiff and others, before the commencement of this action, filled the canal at a point about 700 feet from the southeasterly shore to a point considerably above where the bottom of the old canal was, causing the water of the lake to rise above the level of such bottom, and rendering it probable that the water would rise to a sufficient height to overflow the

lands in which defendants were interested, which were drained by the canal as it existed before the second drainage. Thereupon defendants, believing that such would be the result, peaceably removed the dam and in so doing made an opening therein somewhat lower than the bottom of the old canal. If they had not taken such course, the dam would have caused the water to set back upon the lands they owned or were interested in, which were uncovered by the first drainage.

(7) The reasonable cost of replacing the filling, taken out by the defendants, is $175.

(8) Plaintiff's filling was within the boundaries of the old canal. It was necessary to remove the same in order to prevent great damage to the defendants by overflowing the lands in which they were interested, and they accomplished such result for no other purpose than to prevent such damage from accruing.

(9) After considering plaintiff's request, the court also finds as facts,—the Wisconsin State Land & Improvement Company wholly neglected to comply with the judgment requiring it to restore the canal between Muskego Lake and Wind Lake to the condition in which it found the same.

(10) It was a matter of common knowledge among the people living within the vicinity of Muskego Lake and interested in the drainage thereof, including the defendants, at the time of the acts complained of, that plaintiff was authorized by the judgment against the Wisconsin State Land & Improvement Company, to fill up the excavations made by such company.

(11) The work done by the improvement company consisted in so deepening and widening the canal from Muskego Lake to Wind Lake, and making other excavations, as to lower the former level of the lake at least four feet.

(12) The improvement company, in constructing the canal in the bed of Muskego Lake, followed the old line, but

reduced the width of the former ditch and deepened the same some four feet.

(13) The effect of deepening the canal and all the operations of the improvement company was to lower the bed of Muskego Lake several inches.

(14) Since the last drainage work was done plaintiff has been wholly deprived of the benefit of his riparian rights.

(15) To refill all the excavations made by the improvement company would cost fifteen to twenty thousand dollars.

(16) Plaintiff, by being deprived of the benefit of the lake since January, 1900, has been damaged to the extent of $394. The only practicable way to restore the lake to the condition in which the improvement company found it, is to fill up the canal in the bed of Muskego Lake substantially as plaintiff did, for the reason that such result could not be accomplished by restoring all of the prior physical conditions without a large expenditure of money. The court derives this information from the evidence and from a personal view.

(17) No commissioners, other than the first, have ever been appointed under the legislative enactment of 1887, to which reference is made for authority to do the first drainage work, and no legal work of draining Muskego Lake has been done since the work laid out by such first commissioners was completed in 1889.

(18) All of the defendants except those excluded as aforesaid participated in destroying plaintiff's dam, and did so the next day after the same was completed and before any of the lands they were interested in were affected thereby or any damage whatever had accrued to them by reason of the plaintiff's work.

Upon such facts the court decided as matter of law that the defendants were entitled to a judgment dismissing the complaint with costs, and judgment was so entered. Plaintiff appealed, having filed such exceptions as were deemed necessary to challenge the finding that the effect of placing

the dam across the canal, had it not been removed, would have been to raise the water higher than it was before the operations commenced by the improvement company, also challenging the right of the defendants to judgment on the evidence or the facts found, irrespective of whether his dam was in fact too high or not.

*Geo. L. Williams,* for the appellant.

For the respondents there was a brief by *Ryan, Merton & Newbury,* and oral argument by *T. E. Ryan.*

MARSHALL, J. The evidence abundantly shows that respondents, or those whose rights they assumed authority to summarily vindicate by removing appellant's dam across the drainage ditch in the bed of the lake, were benefited by the work of the Wisconsin State Land & Improvement Company which was condemned in the suit of *Priewe* against such company (103 Wis. 537, 79 N. W. 780), and were parties to such work by acquiescence, and, under the principles laid down in such case, were bound not to complain of such work as regards the effect thereof upon their property. As to them the company could have successfully claimed protection on principles of estoppel *in pais.* In making the second drainage, it adopted the old canal as a basis, in part, for the new work. It so incorporated the old excavation in the bed of the lake into the new one that the identity of the former was in a great measure lost. On that account, when this court came to construe the judgment against the company in the former litigation the first canal was not regarded as having an identity distinct from the second one. It was said, in deciding the appeal, that the effect of the judgment in favor of *Mr. Priewe,* as rendered in the circuit court, was that he was entitled to have the condition of Muskego Lake, as the same existed prior to the second drainage, restored; and, to that end, that he was entitled to have so much of the canal in the bed of the lake, or elsewhere, filled up, as would accomplish

that result. The thought, evidently, in the mind of the circuit court in rendering the judgment, as understood and approved here, was not merely that the original condition of the old ditch should be in all respects restored by the improvement company, but that the former condition of the level of the lake should be restored; that the canal in the bed of the lake, as it then existed, should be so dealt with as to accomplish that result. In that litigation appellant established his legal right to have such former condition restored as against the improvement company. He is evidently entitled to an equitable remedy to secure protection against it in the enjoyment of that right. Since respondents were, by acquiescence, parties to the second drainage work, he has an equitable right, as against them, to a' restoration of the former lake level by the same means that he may justly use as to the improvement company. They cannot be successfully heard to complain of any mere physical change in the canal which does not in fact raise the level of the lake higher than it was before being disturbed by the second drainage. Hence, they were wrongdoers in destroying any part of appellant's work merely because it was done within the boundaries of the old canal. Their position in that regard was not and is not superior in any respect to that of the improvement company from the standpoint of right in the abstract. Therefore, if appellant did no more in fact by way of filling up the canal than was necessary to restore the former level of the lake, or, in other words, if, had such filling not been disturbed by respondents, the level of the water of the lake would not have been lifted above where appellant, as a party not bound by the second drainage operations, was entitled to have the same, then respondents, in destroying his work, were wrongdoers in any view of the case. The position of the trial court, it appears, is in harmony with that view, so far as the course of the trial and the findings of fact furnish any indication of the theory

upon which the judgment was rendered. The judgment, we assume, went wholly on the ground that appellant changed the canal in the bed of the lake so that, had it so remained, in the natural course of things the level of the lake would have been raised so as to submerge lands owned by respondents, or some of them, which were uncovered by the first drainage.

Passing the matter above discussed, we are met by the claim on the part of appellant that the trial court decided as a matter of fact that the dam placed across the canal by appellant was no higher than was necessary to restore him to his former situation as regards the water of the lake, and that such decision entitled him to the relief prayed for or some effective protection against lawless interference with his operations by respondents. There is good ground, it seems, for that claim, looking at one phase of the case as the learned trial court decided the issues. The findings, however, appear to be in irreconcilable conflict. Findings 1 to 8 inclusive may well have been prepared for judicial approval upon the court's suggestion that the issues made by the pleadings were decided in respondents' favor; while findings 9 to 18 seem to have been made in response to requests by counsel for appellant that the matters referred to therein should be passed upon by the court favorably to his client. In the first group of findings we find this language:

"If said filling was not removed . . . it [the water of the lake] would overflow the lands of these defendants . . . which were drained by the drainage commissioners' work."

"If filling was permitted to remain in said channel, as placed there by the plaintiff and his assistants, . . . it would have backed the water over and upon large tracts of valuable tillable land which was reclaimed to the defendant landowners by the drainage done by the commissioners."

Respondents' counsel point to that language with great confidence as justifying their clients in summarily ridding

the canal of the obstructions placed therein by appellant. In the second group of findings we find this language:

"The lake cannot be restored to its natural condition, or the level at which it ordinarily stood after the first drainage, . . . . so as to give plaintiff the beneficial use thereof as provided by the former judgment, without a literal compliance, at great expense, with the judgment rendered in said former action, or the partial damming or filling up of the said drain [meaning the drain in question] near the southerly end of said lake bed, substantially as done by the plaintiff. This finding is based not only on such testimony as is in the case on the subject-matter of this finding, but on . . . personal view."

It seems useless to endeavor to read out of that language by construction any other idea than that appellant's operations resulted in placing a dam across the canal no higher than was reasonably necessary to give him the benefit of the judgment in his favor by restoring the lake level to where it was when disturbed by the improvement company's excavations. Such idea being entrenched as a verity in the findings, if all the other findings were in harmony therewith there could be but little doubt that appellant would be entitled to the relief he sought in this litigation instead of being compelled to go remediless from court and be mulcted in costs for having invoked the arm of equity to protect him in doing the very thing that equity had decreed, after expensive litigation, he was entitled to do.

Counsel for respondents suggested on the oral argument, and there is something of the same sort in their brief, that the court, in making the finding under consideration, had in view merely the level of the water as adjudged to appellant in the former case, not the actual fact as to where the level of the water was after the first drainage, and that respondents were not parties to such litigation, hence were not bound thereby. True, as we have before sufficiently indicated, respondents are not bound by the judgment against the improvement company upon principles of *res judicata*. We see

no indications that the trial court had that in mind as ren-
dering the finding in appellant's favor immaterial as regards
impairing the one in favor of respondents.   The court re-
ferred to the former case, not as settling any particular point
upon the land of appellant up to which he was entitled to
have the lake level restored, but as regards the principle
there established, which must rule this case, not upon the
principle of *res judicata,* but because, irrespective of the for-
mer litigation, appellant is entitled to the benefit of the lake
level unaffected by the operations of the improvement com-
pany.   In other words, the principles that ruled the former
case must certainly prevail in this, on that same subject, not
because they were there adjudicated, but because they are
correct.   Of course, the fact as to just where the former lake
level was was a matter material to be established in this case
independent of the former litigation, and the necessary
height of the dam in the canal to raise the lake to such level
as well.   Looking to the findings in one aspect, we should say
the trial judge was satisfied that such level was below where
appellant's work would have restored it.   Looking at the
findings in another aspect, the contrary just as clearly ap-
pears.   This irreconcilable conflict would not call for a re-
versal of the judgment if it were clearly right on the evi-
dence and the law applicable thereto.   But we are unable to
come to the conclusion that it is.   The evidence is certainly
not sufficiently conclusive for respondents to enable us to
come to a satisfactory conclusion that way without doing the
work here that rightfully should be done by a trial judge and
generally is left, upon a reversal, for him to do, where there is
considerable doubt as to the truth of the matter.   *Brown v.
Griswold,* 109 Wis. 275, 85 N. W. 363; *Bostwick v. Mut. L.
Ins. Co.* 116 Wis. 392, 92 N. W. 246.

It seems that the learned trial judge, in looking at the case
from the standpoint of the issues he deemed material, lost
sight of the fact that it was the level of the water of the lake

prior to the second drainage that appellant was entitled to have restored, not necessarily the former physical condition of the canal from Muskego Lake to Wind Lake. The decision of this court in the former litigation was not studied with legitimate effect by either the court or the learned counsel for respondents. Hence it was overlooked that, to the end that the right of *Mr. Priewe* to the restoration of the lake level he sought might be vindicated with the highest degree of certainty attainable without unnecessary hardship to the improvement company and without endangering the substantial rights of persons not before the court who were interested in the first drainage, the judgment of the court below was in effect modified so as not to be read as requiring such company to incur the enormous expense,—do that which, probably, under the circumstances of its financial condition was impossible,—of filling up all of its excavations and restoring all physical conditions in every respect as it found them, but only requiring it to fill up so much of the canal as should be found necessary to restore the lake level to where it was after the first drainage. That obviously had in contemplation that a mere damming up of the canal in the bed of the lake, or at some point, to the necessary height to restore the former lake level, would satisfy the judgment. Certainly the laws of hydraulics were not so little understood here but that it was in mind that to accomplish such result in such way the dam would necessarily have to be constructed higher than the bed of the old canal; and just as certainly it was supposed that the language of the decision would convey that idea to those who might be called upon to execute it or decide other cases involving the same situation. In the old canal the water of the lake moved at the start, evidently, in a very sluggish stream, about three feet deep, as it is shown by the levels sworn to by the engineer who laid out the work, that the slope of the bottom of the canal in the lake was only about two inches in 1,100 feet. The entire fall toward Wind Lake,

as shown by the engineer's work, was just enough to cause a
slow current of water from one lake to the other, whereas,
the building of a dam across the canal after it had been deep-
ened some four feet, to a height considerably above the bot-
tom of the old canal, would necessarily create a fall in going
a short distance from the crest of the dam, which would ob-
viously cause the water to flow out of the lake over the crest
of the dam in a shallow but very rapid stream.   The result
could not be otherwise, in view of the amount of surplus
water in the lake, than to merely raise the level thereof
slightly above the crest of the dam.   The record in this case
shows that, with the dam cut down as it was by respondents,
to a point several inches below the bottom of the old canal,
the water flowed through the opening so rapidly that all the
surplus water of the lake was caused to flow into the canal
below without raising the level of the lake more than about
seven inches above the location of the old canal bottom,
whereas formerly it was a little over three feet above that
point.   The learned court, in the sixth finding, gave great
significance to the fact that plaintiff's dam raised the water
above the bottom of the old canal, as if the bottom of the
canal, instead of the water level of the lake, was the impor-
tant feature to be studied.   True, the evidence is undisputed
that the dam raised the water above such bottom, but plaint-
iff was entitled to raise it, not only to that point, but some
three feet above the same, since that is where it was before
the second drainage, as shown clearly by the evidence of
Mr. Powrie, the engineer, in connection with the diagrams
verified by him and introduced in evidence.   Such dia-
grams show the level of the water of the lake and the other
levels significant for the purposes of this case, at different
times, and they, in connection with Mr. Powrie's evidence,
show clearly that while appellant's dam was constructed some
over two feet and a half higher than the bottom of the old
canal, the crest thereof was yet about seven inches lower than

the level of the water as it formerly flowed through such canal.

Who can say that seven inches of perpendicular space between the line of the water level as the same existed after the first drainage and the crest of appellant's dam, the crest being twenty-two feet long and the fall therefrom to the tail water below being three feet or more, as shown by the evidence, would not have been reasonably sufficient to pass the water of the lake in a sufficient volume to have prevented the lake level from rising higher than where appellant was entitled to have the same, without actually experimenting or at least without knowing something about the volume of water to be discharged in order to prevent such rising, and the speed of the current under the circumstances? No witness in the case testified with any degree of definiteness, either as an expert or otherwise, on the subject. There was no proof from which a satisfactory conclusion could be reached independently of expert evidence that the dam, under the circumstances, would not allow the necessary amount of water to pass out of the lake. When the learned trial judge came to this branch of the case, though he evidently deemed the matter not material since in any view of the evidence the bottom of the old canal was disturbed by the dam and the water raised above it, he found, in effect, that such structure was not, in view of the fall from the crest thereof to the tail water below, caused by the second drainage,—the "changed condition," as the matter was expressed in the finding,—higher than was required to prevent the water of the lake from flowing to the level of the water below the crest of the dam in greater volume in a given time than it was wont to do before the second drainage; in other words, that the dam was none too high to restore the lake level to where it was before the canal was deepened by the improvement company. There was nothing definitely to that effect in the evidence of Mr. Powrie, the engineer, upon whose testimony the learned

court evidently relied in making the sixth finding to the ef-
fect that the dam, as constructed, would have caused the
water of the lake to back up over lands uncovered by the first
drainage. The witness said, if the water raised to the top
of appellant's dam it would raise the water of the lake that
high. It would not require a civil engineer to tell that. He
said further that if the canal was filled up several feet
above where it was before the second drainage, speaking, evi-
dently, of the entire canal between the two lakes, it would not
serve the original purpose. That, too, is evident. However,
there was no such case before the court. The canal as a
whole had not been filled up several feet above where the im-
provement company found it, and no one proposed to do
that. There had been a dam put across the canal, the crest
thereof being several inches below the level of the lake as the
improvement company found it. That would not neces-
sarily, if allowed to remain, have prevented the water of the
lake from being discharged therefrom as fast as formerly.
He said if there was a dam across the canal such as appellant
put in it would set the water back. That, too, is evident.
It did not require the evidence of an expert to prove that
fact. However, appellant had a right to set the water back
so as to raise the level thereof in the canal some three feet
above the bottom of the old canal. None of the questions
that elicited such evidence was calculated to obtain any val-
uable information bearing upon the vital issues in the case
or any valuable information at all except upon the false
theory that the water could not be legitimately raised higher
than would result from damming the canal to a level with
the bottom of the old canal. When the witness was asked
whether, if the water was raised as high as appellant's dam,
it would have any effect on the land uncovered by the first
drainage, he said he could not tell offhand. At that point
the witness evidently did not have in mind the fact that the
levels run by him, which were before the court, showed that

the crest of the dam was some seven inches below the level of the water after the first drainage, or, as probably was the fact, he was unable to say, without knowing the volume of the surplus water of the lake and carefully calculating from the length of the crest of the dam how many inches above the same would be required to vent such surplus, what the effect of appellant's dam might ultimately have been had it not been removed.

The case on the evidence being as above indicated, it is clear that we cannot sustain the judgment as right regardless of the findings. Neither can we say, with such certainty as a fact ought to appear in order to be found upon evidence here, that appellant's dam was not too high; though it seems that the probabilities point pretty strongly that way. It may be the truth of the matter cannot be told with certainty without actually experimenting with the dam as it was constructed. If so, appellant ought to be permitted reasonable opportunity to make such experiment up to a point which would at least raise the water substantially to the danger line. However, it seems that the amount of water that would naturally flow out of the lake in its former condition can be determined approximately by a person experienced in that line of work, using the appliances and rules usually employed for that purpose, and that the height of water above the crest of the dam, in view of the length of the crest, required to permit the water from above the dam to flow over the same and toward Wind Lake in a sufficient volume to prevent raising the level of Muskego Lake above where appellant is entitled to have the same, may be determined with reasonable certainty. It seems, also, that evidence may be readily obtained as to a construction that may be cheaply put into a dam across the canal to regulate itself, so that before the water above the dam passes the danger line the volume thereof passing over the crest will be automatically sufficiently increased to avoid raising the level of the lake too

high.   Evidence along these lines, or such lines as will enable
the court to define, with reasonable certainty, appellant's
rights and those of the respondents as well, should be pro-
duced, and then a judgment should be rendered accordingly,
and the same should then be executed and respected by all
parties, and the litigation cease over this matter, the under-
lying principles of which have been several times passed
upon by this court.

There is another feature of the case worthy of some con-
sideration.   Appellant, by his operations, did not purpose
doing more than just enough to avoid the effect upon the lake
level of the improvement company's work, and it was his in-
tention, if his filling as completed should prove to be too
high, to promptly lower the same upon that fact developing.
The evidence is also undisputed that the wishes of the farm-
ers who desired to have the old drainage work remain ef-
fective would not be violated in that regard by appellant;
also that the level of the lake was not up to where appellant
was entitled to have the same, nor where it injuriously af-
fected any of the respondents, when they took the law into
their own hands and destroyed the work.   There are no cir-
cumstances disclosed by the evidence showing that such hasty
summary action on respondents' part was at all necessary to
prevent irreparable damage to them.   For all that appears,
they could safely have waited till the water was up to the old
line and then have avoided all danger of its going higher, if
such danger developed, by merely requesting appellant to
lower his filling, or by then reducing the height of the dam
themselves in a reasonable way, instead of destroying the
same entirely, as they did, in effect.   Again, the courts were
accessible to them and were able to furnish them adequate
protection, the same as they were open to appellant, and no
reason appears by the evidence to justify them in not invok-
ing judicial assistance instead of summarily wholly destroy-
ing the effective use of the dam.   In that situation, were re-

spondents justified in advance of their rights being judicially settled, in doing what they did, and would they be justified in continuing such conduct, as it was made plain to the trial court they purposed doing unless restrained by injunctive relief in appellant's favor? Counsel for appellant claims not, and makes the point that the judgment appealed from is wrong upon the evidence and the findings on that question, if upon no other.

The solution of the proposition last suggested is governed by a few familiar principles. Appellant, as we have seen, had a clear legal and equitable right to change the character of the canal so far as necessary to enable him to restore the water of the lake to the condition it would have been in but for the second drainage. So long as his actions in that regard caused no actual injury to respondents, nor created a situation from which injury to them was certain to result, they had no cause of complaint against him. Without such cause they could not have brought action against him, either in law or in equity; hence they had no right to take the law into their own hands and destroy the result of his work. The law on that point is well settled. Garrett, Nuisances, 353; Wood, Nuisances, § 100; 3 Blackstone, Comm. 220; 1 Hilliard, Torts (4th ed.) 605, 608, and note; *Adams v. Barney,* 25 Vt. 231; *Amoskeag Mfg. Co. v. Goodale,* 46 N. H. 53; *Brown v. Perkins,* 12 Gray, 89, 101. There was no nuisance to be abated in any view of the case up to the time respondents did the acts complained of; therefore they manifestly had no action at law against him, because they had suffered no damage. There was no certainty that what appellant had done would cause any actionable nuisance to respondents or any of them, even if it be admitted that the filling placed in the canal was of sufficient height that, had it remained, the lake level would have been higher than appellant was entitled to have it, as it clearly appears that he did not intend to maintain the filling so as to do more than restore the former

level of the lake. ' If he in fact constructed it a little too
high, it was a mere mistake of judgment, and constituted no
basis for an action in equity to restrain a threatened nui-
sance, since, so far as appears, he stood ready to adjust the
level of the filling to the proper height as soon as that de-
veloped, and there was no danger whatever of any irrepa-
rable damage happening to respondents before they could
themselves have reduced the filling had appellant neglected
or refused to do so. He had a right to exercise his judgment
in the matter, so' long as he proceeded reasonably and in-
flicted no injury upon respondents. Any violation of that
right by them constituted them wrongdoers, subject to be
dealt with at law or in equity, as the nature of the case might
require in order to furnish appellant an efficient remedy
therefor. In short, since at the time they destroyed appel-
lant's dam they had no right of action against him, legal or
equitable, their conduct towards him was wrongful and he
was entitled to some judicial remedy therefor. In view of
the undisputed evidence that it was their purpose, at the
time of the commencement and trial of this action, to con-
tinue interfering with appellant's efforts to restore the lake
level by filling up the channel in the bed thereof, and that the
putting of a new dam in the channel would have resulted
only in a repetition of what is here complained of, it seems
obvious that there was no adequate way open for him to rem-
edy the interference with his reasonable efforts to restore the
former lake level, but to apply to a court of equity for pro-
tection, as he did.

It is clear to us that the evidence in this case should be re-
considered by the trial court in the light of the principles
here laid down, keeping prominently in view the fact that
respondents are not entitled to prevent obstructions from
being placed in the canal in the bed of the lake merely be-
cause they are built up above the level of where the bottom
of the old canal was, which do not do more than obviate the

effect of the second drainage work; that the height to which appellant may rightfully build such obstructions is not limited by where such old bottom was, but by the effect of the dam as regards raising the lake level up to where the commissioners' drainage left it; that the objective point to be at all times kept in view is the restoration of such former level, regardless of where the crest of the obstruction used to accomplish that result may be with reference to the old canal bottom, so long as it is not high enough to carry the ordinary level of the lake above where it was before.

The judgment appealed from must be reversed and a new trial had on the questions suggested, and new findings and conclusions be then filed, and a decree be then rendered according thereto and in harmony with the principles declared in this opinion for the guidance of the trial court.

*By the Court.*—So ordered.

DODGE, J., took no part.