MUIR et al. v. KAY et al.

No. 4236.   Decided Oct. 5, 1925.   Rehearing Denied April 9, 1926.
(244 P. 901.)

1. . WORDS AND PHRASES.  "Et cetera," of which, "etc.," is a contraction, means "and others," "and so forth," "and the rest," and meaning depends upon description and enumeration of things preceding the term and the subject-matter to which it is applied.

2. HIGHWAYS.  Evidence in suit to enjoin interference with irrigation ditch *held* to sustain finding that extension of ditch along highway did not interfere with traveling public or abutting landowners.

3. HIGHWAYS—ABUTTING LANDOWNERS HELD NOT TO HAVE SUCH SPECIAL INTEREST IN EXTENSION OF DITCH ALONG HIGHWAY TO WARRANT INJUNCTIVE RELIEF OR ABATEMENT.  Where irrigation ditch was extended along highway, but in such way as not to interfere with rights of traveling public or use of highway by abutting owners, latter *held* not to have such special interest or injury as to entitle them to injunctive relief or abatement of ditch. [1]

4. HIGHWAYS—PRIVATE CITIZENS MAY REMOVE ENCROACHMENT ON HIGHWAY, WHERE NECESSARY TO PASSAGE, IF THEY CAN DO SO WITHOUT INVOLVING BREACH OF PEACE.  Private citizens may abate encroachment on highway which actually obstructs passageway, provided such abatement does not involve breach of peace and due care is used in removal.

5. HIGHWAYS.  Private citizen may not abate encroachment on highway which does not impede use thereof, but removal must be left to public authorities, under Comp. Laws, 1917, §§ 2814-2819.

[1] *Dooly Block* v. *Rapid Transit Co.*, 33 P. 229, 9 Utah, 31, 24 L. R. A. 610; *Whitesides* v. *Green*, 44 P. 1032, 13 Utah, 341, 57 Am. St. Rep. 740; *Schettler* v. *Lynch*, 64 P. 955, 23 Utah, 305.

Corpus Juris-Cyc. References:
[1]  Et Cetera 21 C. J. p. 1255 n. 29, 33, 34, 35, 36, 37; p. 1256 n. 50.
[2]  Highways 29 C. J. p. 631 n. 32.
[3]  Highways 29 C. J. p. 545 n. 41; p. 552 n. 32; p. 627 n. 81; p. 628 n. 82, 83; p. 632 n. 52:  Nuisances 29 Cyc. p. 1208 n. 56, 57; p. 1209 n. 58; p. 1210 n. 59; p. 1211 n. 60; p. 1212 n. 61.
[4]  Highways 29 C. J. p. 626 n. 53, 54 55, 56, 57, 58.
[5]  Highways 29 C. J. p. 626 n. 53, 54, 55, 57.

Appeal from District Court, First District, Box Elder County; *M. C. Harris*, Judge.

Suit by W. S. Muir and another against Lorenzo Kay and others. Judgment for plaintiffs, and defendants appeal.

AFFIRMED.

*Pratt & Pratt*, of Ogden, for appellants.

*Le Roy B. Young*, of Brigham City, for respondents.

STRAUP, J.

The appellants, the defendants below, own lands in section 1, township 11 north, etc., in Box Elder county, Utah; respondents, plaintiffs below, in the northwest quarter of the northeast quarter of section 12 adjoining section 1 on the south. Both sections formerly were owned by a common grantor, the Utah-Idaho Sugar Company. When conveyances at different times were made by it of the several tracts or parcels of land in both sections, a strip of ground 2 rods in width was either reserved in the grant or not granted at all, on all sides of the sections, and a strip running through the center of the section north and south and one running through the center east and west. In some of the grants the strip was reserved "for roads," in some "for roads and etc." and in others the strip was not granted, the tracts conveyed not including the strip. These strips, especially the strip of 2 rods running through the center of section 1 north and south were used as a public road or highway for 20 years or more, and were fenced. The road running through the center of section 1 from north to south was found by the court, and it is admitted by all parties concerned, to be a public road or highway. It, however, was maintained by the abutting land owners and perhaps by others owning lands in the section. The defendants' lands abut the highway running through the north half and the north half of the south half of section 1, some on the east and some on

the west side of the highway. H. H. Cordon owns the south-
west quarter of the southeast quarter of section 1, abutting
the highway on the east, and George and L. E. Abbot the
southeast quarter of the southwest quarter of section 1, abut-
ting the highway on the west. None of them is here com-
plaining. Plaintiff Horne's land is the west half of the
west half of the northeast quarter of section 12, abutting the
highway on the east, and adjoining Cordon's land on the
south, and plaintiff Muir's lands adjoin Horne's lands on
the east. The common grantor, the Utah-Idaho Sugar Com-
pany, when it sold and conveyed the various tracts or parcels
of lands to the defendants, the plaintiffs, or their predecessors
in interest, and to others, also sold and granted to them
water rights for such lands from its canal coursing through
the country a short distance north of section 1. To convey
the waters to their lands, a lateral canal or ditch was con-
structed by the water users from the canal to the center of
the north boundary line of section 1. There the lateral was
divided into three branches, one running to the east and one
to the west, along the north boundary line of section 1, and
one running in a southerly direction, mainly on the roadway
running north and south through the center of section 1,
part way on the east and part way on the west side of the
road, to the northwest corner of Cordon's lands, and from
there coursed easterly along the north boundary line of
Cordon's lands.

The water users conveying water through this ditch run-
ning through the center of section 1, for their mutual bene-
fit, 20 years or more ago formed a corporation known as
the Elwood Ditch Company, and such ditch was known as
the Elwood ditch. Because of elevations, the plaintiffs could
not irrigate portions of their lands from the Elwood ditch
coursing easterly along the north boundary line of Cordon's
lands, and had no right of way over his lands. Conse-
quently, several years ago, plaintiffs obtained an oral permit
from the local manager of the land and canal department
of the sugar company to extend, and extended and con-
structed, a ditch southerly on the east side of the road or
highway from the point where the Elwood ditch coursed

easterly, to their lands adjoining Cordon's lands on the south and coursed water therein from the Elwood ditch to their lands to irrigate them in raising sugar beets and other crops. None of the defendants own land abutting the road along which the plaintiff's constructed such ditch; all of their lands abutting the road to the north thereof. The defendants, objecting to the maintenance of the ditch so constructed by plaintiffs, at different times filled it up and destroyed it, thereby depriving the plaintiffs of the use of water for their lands and injuring their growing crops. The plaintiffs brought this action to enjoin the defendants from interfering with the ditch and for damages. The defendants answered and counterclaimed, alleging that the strip 2 rods in width, and on which plaintiffs constructed the ditch, was dedicated by the sugar company, the common grantor, as a public highway, and as such was used by the defendants and the public generally 20 years or more and adversely to the owner of the fee thereof and without interruption or interference until the construction of the ditch by the plaintiffs, and that the defendants and their predecessors, as often as it became necessary, repaired the road and kept it in proper condition for traffic to the county road on the south boundary line of section 1, and that the construction and maintenance of the ditch by the plaintiffs were wrongful "and constituted a public nuisance and danger in the use of said road by defendants and other persons entitled to use the same, and rendered said road at times impassable and useless as such road," and for such reasons the defendants, claiming the right to do so, filled up the ditch and prayed that the plaintiffs be enjoined from further maintaining it.

The case was tried to the court, who found the issues in favor of plaintiffs, and permanently enjoined the defendants from interfering with the ditch so constructed by the plaintiffs, awarded the plaintiffs $75 damages, and dismissed the counterclaim. The defendants appeal.

There is no controversy as to the ownership or location of the several parcels or tracts of land claimed to be owned by the plaintiffs or the defendants, or as to the existence or location of the road 2 rods in width through the center

of sections 1 and 12 from north to south, or that any of the lands of the defendants abutted the road along which the ditch of the plaintiffs was constructed, or that the Elwood ditch for more than 20 years coursed through the center of the section chiefly on and along the side of the highway to the northwest corner of. Cordon's lands, from which point the plaintiffs constructed their ditch to their lands on and along the east side of the highway. Nor is there any serious contention that the plaintiffs, to irrigate their lands, were entitled to waters from the canal and to course them through the Elwood ditch, or that, because of elevations, plaintffs could not irrigate portions of their lands from the Elwood ditch without extending the Elwood ditch beyond the northwest corner of Cordon's lands. As to that, and among other things, the court found:

"(7) That in order for plaintiffs to convey the water onto a part of their premises from the point where said ditch turns eastward, it is necessary that said ditch be extended along the said east side of said highway to the south line of section 1, thence, across the public highway [the county road running east and west] and onto the northwest corner of the premises belonging to the plaintiff W. R. Horne, and that during the year 1920 plaintiffs' predecessors in interest obtained from the Utah-Idaho Sugar Company, the owners of the fee of said highway, a right to construct said ditch along the east side of said highway, but within said highway. * * * *"

"(9) That plaintiffs have no other way in which to convey their water upon said premises other than through the ditch above described [the ditch constructed by the plaintiffs] without condemning the right of way across the premises of H. H. Cordon. * * *"

It is claimed these findings, or at least portions of them, are not supported by the evidence. That the plaintiffs and their predecessors used and conveyed waters from the canal through the Elwood ditch is not seriously disputed. The contention made in such respect is that the plaintiffs, independentently of such conveyance and use, did not show any right to do so. But there is some evidence independent of such conveyance and use tending to show such right, which evidence is not disputed. In the absence of evidence to the contrary, and because of the conveyance and use by plaintiffs of such waters from the canal through the Elwood ditch, we

think the right to the use of such waters and to course them through the Elwood ditch, such matters being only collaterally in issue, was sufficiently shown to support the findings.

But the appellants say though the fee of the 2-rod strip was in the common grantor, still the strip, having been dedicated for a public highway and as such used for more than 20 years, the common grantor could not by oral grant, much less could its local manager, give an oral permit to the plaintiffs to construct a ditch on any part of the highway, nor could the common grantor, by conveyance in writing, properly do so, because to grant such a permit would be to place an unauthorized burden on the easement for highway purposes, and would be in conflict with it. The only evidence in the record that the Utah-Idaho Sugar Company granted the plaintiffs a permit to construct the ditch is that the local manager of the company granted an oral permit so to do. Whether such an executed oral grant, if otherwise valid, would, as between the parties, be binding, would depend upon a variety of elements and conditions. But we do not see wherein the defendants may defend or maintain such claims on behalf of the sugar company. Whether the company by deed could have granted plaintiffs such a permit again would depend upon a variety of things. That the strip of 2 rods in width in one manner or another was reserved for a road or highway is clear enough. Whether it also was reserved for other purposes is not so clear. The court found it was reserved, not only for a road, but also for ditches. The finding that the strip was reserved for anything but for a road is challenged. When the tract of land abutting the west side of the road along which plaintiffs constructed their ditch was conveyed by the common grantor, a strip one rod in width on the east side of the conveyed tract was reserved "for road etc." The conveyance made of the tract, the Cordon tract, abutting the east side of the road along which the plaintiffs constructed their ditch, excluded 16.5 feet on the west side of such tract, and thus no conveyance at all was made of such strip 16.5 feet. It was on that strip that the plaintiffs constructed their ditch. However, the two

strips, together 2 rods in width, were for more than 20 years used as and for a public highway and as a part of the highway running through the center of the section from north to south. The conveyances to the defendants of tracts of land abutting the road north of the place where the plaintiffs constructed their ditch contained similar reservations, either "for roads," or "for roads and etc.," or where, as in the conveyance of the Cordon tract, no conveyance at all made of the strip ocupied by the road. The plaintiffs contend, and the defendants deny, that, since the common grantor, when conveyances of the several tracts of lands were made to the defendants and to the plaintiffs or to their predecessors in interest, also sold and granted waters appurtenant to such lands, and because the Elwood ditch, coursing north and south through the center of section 1, was constructed and maintained for 20 years or more on and along the side of the road, and because of the language of the reservations in the grants, the reservation was intended, not only for roads, but also, as found by the court, for ditches, and hence the plaintiffs had the right to construct the ditch constructed by them.

It is quite difficult to understand just what was intended by the language "and etc." in the reservations. The term "et cetera," of which "etc." is a contraction, in its literal and extended meaning has been defined as "and others; and other things; and so forth; and so on; and the rest." 21 C. J. 1255. The meaning depends so much upon the context of the instrument, the description and enumeration of matters and things preceding the term and the subject-matter to which it is applied. In one instance it may mean one thing and a different thing in another. As here used, that a reservation of something in addition to roads was intended may well be conceded; but that a reservation for ditches was intended is not so clear. Further than the asserted claims of counsel for the respective parties we have no aid from them. However, since for other reasons the appellants ought not and cannot prevail on this appeal, we leave the ambiguity undecided; but for the purposes of

further consideration of the case we shall regard the ambiguity as though resolved in favor of the appellants, as well as the question of whether the common grantor and owner of the fee of the 2-rod strip, in view that it for 20 years or more was continuously and uninterruptedly used as a pubilc highway, could by deed or otherwise give the plaintiffs a valid grant or permit to construct a ditch upon a portion of the strip or highway.

We thus proceed to what we regard the controlling question and the one most controverted by the parties. The court further found:

"(11) That said ditch does not interfere with any rights of the defendants and that these defendants have not alleged or proved any special interest in said highway at the point where said ditch is constructed different from the public in general, and that defendants have not suffered any injury as a result of the maintenance of said ditch different from that sustained by the public generally.

"(12) That said ditch does not materially affect or injure any persons whatsoever, and does not interfere with the public traveling upon said highway."

"(14) That, if the acts of the plaintiffs constituted a public nuisance, that these defendants had no right to summarily destroy the same without showing some special injury suffered by them different from that of the public, and that the power to abate a nuisance upon a public highway is vested in the county road supervisor under the jurisdiction of the county commissioners, unless as heretofore noted the abutting owner alleges and proves some special injury suffered by him different from that suffered by the public generally, which the court finds was not alleged or proved in this case."

These findings also are challenged. It is claimed that the findings that the ditch does not materially affect or injure any person and does not interfere with the public traveling the highway, and that the ditch does not interfere with rights of the defendants are not supported by the evidence. The evidence show that the ditch was 5 to 7 feet in width and was constructed on and along the east side of the highway near the fence and a foot and a half or two feet lower than the center of the road which from fence to fence was 33 feet wide. The defendants gave some evidence to show that, bcause of the ditch, there was not sufficient roadway

to permit two wagons with hayracks on them to pass
without one of the wagons getting into the ditch. The     2
plaintiffs gave evidence to dispute that and to show
that vehicles of all kinds readily passed on all portions of
the road along which plaintiff's ditch was constructed, with-
out any of such vehicles getting into the ditch; and the
witnesses for the defendants admitted and those of the plain-
tiffs testified that there was as much roadway available where
the plaintiffs constructed their ditch as anywhere along the
road where was the Elwood ditch. Some evidence also was
given by defendants to show that overflows from the ditch
were permitted which caused the road to be muddy, but that
also was controverted by witnesses for the plaintiffs, and
there is no substantial conflict but that the road along which
the ditch was constructed by the plaintiffs was in as good
condition for travel as any portion of the road to the north
thereof. We think the findings complained of in these re-
spects are supported by the greater weight of the evidence,
and on the record are approved by us.

The findings, however, from a legal viewpoint, in other
particulars are challenged. The defendants contend that
their owning lands abutting the highway to the north of
which the ditch by plaintiffs was constructed and their using
the highway including that portion on which the ditch was
constructed for travel in going to and from their lands and
hauling products over the road, gave them a special interest
in the road, that they, as well as the public, in the use of
the road, were entitled to the full width of it, and that any
one obstructing any portion of it by ditch or otherwise was
guilty of maintaining a nuisance which the defendants or any
member of the public had the right to remove or abate;
and hence plaintiffs were not entitled to any relief and that
the defendants were entitled to an injunction restraining
the plaintiffs from further maintenance of the ditch. The
evidence clearly shows that the construction of the ditch in
no particular interfered with the ingress or egress to and
from the defendants' lands or that it obstructed the passage
of travelers on the highway or hindered or impeded their
travel, and without dispute shows that the portion of the

road on and along which the ditch of plaintiffs was constructed was as traversable as was the road to the north thereof, along and upon which the lands of the defendants abutted. The law on the subject, and as stated in 29 Cyc. 1208, seems to be well settled. It is there said:

"A public nuisance does not furnish grounds for an action either at law or in equity by an individual who merely suffers an injury which is common to the general public; but an individual who sustains an injury peculiar to himself may have relief against a public nuisance, and is entitled to proceed in equity for the abatement of or an injunction against the nuisance, or to maintain an action at law for damages on account of the special injury which he has received. It is absolutely essential to the right of an individual to relief against a public nuisance that he should show that he has suffered some special injury other than that in which the general public share alike, and the difference between the injury to him and the injury to the general public must be one of kind and not merely of degree."

In 29 C. J. 627, the rule is stated:

"Where a road is shown to be an existing public highway, a private individual is entitled to an injunction against encroachments or obstructions thereon when, and only when, he has sustained special damage, different not merely in degree but in kind from that suffered by the public at large."

Such is stated to be the well-settled rule. Both texts are supported and illustrated by numerous cases from many different jurisdictions. As stated by the cases, the reason for the rule is that, if one individual may interpose for an infringement upon a public road or for a public injury, other persons may, and a discharge in one case would be no bar to another, and thus there would be no end to litigation, and that one may not be compensated for nor redress a public injury. As is seen, the court found that the defendants had neither alleged nor proved any special interest in the highway along which the plaintiffs constructed their ditch, or that they suffered any special injury different from that of the general public, and under such circumstance they were not justified in filling up or destroying the ditch nor entitled to have its further maintenance restrained. We think no such special interest or injury was alleged or proven. What defendants claim to be special interest or injury is

not such, and is not in kind different from, but in degree merely similar to, that suffered by the general public.

The cases cited by defendants to support their contention do not, as we think, support them. The case of *Dooly Block* v. *Rapid Transit Co.,* 33 P. 229, 9 Utah, 31, 24 L. R. A. 610, is cited. There the company was enjoined from laying and maintaining a third street railway track in a public street upon which plaintiff's property abutted. The injunction was granted on allegations and proof to the satisfaction of the court that the street railways already in the street were sufficient for the use of the public, and that an additional rail or track would seriously impair and damage the street for use as a street and cause "special injury to the property rights of the abutters," and would interfere with free access to and from their properties. Further, the question of whether the interest of the plaintiff in the street, or whether its injury was different in kind from that of the general public or only in degree similar seems not to have been considered or discussed, nor the question as to the right of the plaintiff, because of the existence or the want of such special interest, to maintain the action for injunctive relief.

The defendants have also cited cases (*Whitesides* v. *Green,* 44 P. 1032, 13 Utah, 341, 57 Am. St. Rep. 740; *Schettler* v. *Lynch,* 64 P. 955, 23 Utah, 305, and others) to the effect that the public is entitled to the use and enjoyment of the whole of a public highway, and that an individual may not appropriate a portion of it to his own use. That may well be conceded; but, before a private citizen may sue for damages for such trespass or seek injunctive relief against it, he must show that he has sustained special injury or has a special interest in the highway, different in kind and not merely in degree from that of the general public. This the defendants neither alleged nor proved.

Then the defendants also cite cases (*Long* v. *Wilson,* 93 N. W. 282, 119 Iowa, 267, 60 L. R. A. 720, 97 Am. St. Rep. 315; *O'Brien* v. *Central I. & S. Co.,* 63 N. E. 302, 158 Ind. 218, 57 L. R. A. 508, 92 Am. St. Rep. 305; *First National Bank* v. *Tyson,* 32 So. 144, 133 Ala. 459, 59 L. R. A. 399, 91 Am. St. Rep. 46, and others) to the effect that an abutting

property owner has such an interest in a street or highway upon which his property abuts as to entitle him to enjoin an obstruction to the highway if it injuriously affects his property and interferes with ingress and egress to and from his property. Such may also be conceded. But again the defendants neither alleged nor proved such condition or circumstance.* The cited cases, however, recognize the principle that, where an interest or injury to the abutting property owner is only in degree and not in kind different from that of the general public, no action for damages or injunctive relief on his behalf will lie.

The defendants further assert that, though no special interest in the highway or special injury was shown, and though they for such reason were not entitled to damages or injunctive relief, still they had, as had any private citizen, the right to abate the obstruction or nuisance, if the abatement did not involve a breach of the peace. There is a conflict in the decisions as to that. *Turner* v. *Holtzman*, 54 Md. 148, 39 Am. Rep. 361. In 29 C. J. 626, the rule is stated:

"A traveler actually hindered may personally remove an obstruction in a highway, as may any one else if specially injured, and not otherwise, although there are cases which uphold the doctrine that special damage is not necessary. It has been held by some authorities that a statute providing for removal of obstructions by the highway officers is merely cumulative, and does not prevent their removal by an individual. But other authorities have held that the statutory remedy must be followed, and that an individual has no right to take the law into his own hands."

There are circumstances where at common law a private subject had the right to abate a public nuisance in a public highway, when to do so did not involve a breach of the peace, and where due care was exercised in abating it, such as removing a fence or other structure or obstruction unlawfully placed across the highway, and which obstructed its passage, but, unless the private subject had occasion to make use of the highway or if the obstruction did not impede his progress traveling on the highway, he was required to leave the public injury to be redressed by the public authorities. It was the existence of an

emergency which justified interference by the individual, and the right of a private citizen to abate the encroachment or obstruction was limited by the necessity of the case. *Walter* v. *Louisville R. Co.*, 150 S. W. 824, 150 Ky. 652, 43 L. R. A. (N. S.) 126, Ann. Cas. 1914D, 441; notes to case *Felt* v. *Elmquist*, 124 Am. St. Rep. 603, 604; *Watts* v. *Norfolk, etc., Ry. Co.*, 19 S. E. 521, 39 W. Va. 196, 23 L. R. A. 674, 45 Am. St. Rep. 894; *Priewe* v. *Fitzsimons & Connell Co.*, 94 N. W. 317, 117 Wis. 497.

We have a statute (Comp. Laws Utah 1917, §§ 2814 to 2819) respecting the removal of encroachments upon a public highway by public authorities. While ample relief is there afforded to redress such public injury, still, if a traveler has occasion to use the highway and the encroachment actually obstructs or impedes his passageway, he may remove or abate the encroachment without suit, if to do so does not involve a breach of the peace, and if due care is exercised in removing or abating it. In other words, if a fence or ditch is built or some other obstruction wrongfully placed across a public highway which prevents passage, a traveler whose progress is obstructed thereby has an undoubted right to remove so much thereof as may be necessary to enable him to proceed upon his way, if he can so remove it without a breach of the peace and without causing any unnecessary injury or damage, though he may not be entitled to maintain suit to abate the nuisance without showing special injury to himself, different in kind from that suffered by the public at large. We believe such to be the weight of authority and the better reason (although there is a conflict in the authorities as to such proposition), notwithstanding the statute authorizing the removal of encroachments by the public authorities. But again the defendants did not bring themselves within any such rule. The ditch here was not filled up or destroyed by the defendants to permit their passage over the highway along which the ditch was constructed. No such claim is made, and no such claim properly could be made on the record.

It is therefore our opinion that the judgment of the court below should be affirmed. Such is the order.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.