WhitakeR, Judge,
delivered the opinion of the court:
In the construction of the Post Office Department building in the city of Washington, D. C., it was necessary to keep' the building heated to prevent the plastering, masonry, etc., from freezing. To do this the plaintiff constructed a temporary heating plant. It sues for the cost of constructing it and for the cost of operating it above the cost of the fuel and the labor necessary to operate it. It says that the defendant w as under the obligation to furnish the necessary appliances' for the furnishing of the heat, and that the extent of its obligation was to furnish the fuel and labor necessary to produce the heat. It bases its claim on the provisions of article 59 of the specifications, which reads:
The contractor shall provide all necessary fuel, labor,' etc., necessary for the temporary heating of the building, as required to protect all work and materials against injury from dampness and cold, to the satisfaction of the Construction Engineer.
It is nowhere explained what the parties intended by the use of the abbreviation “etc.” The plaintiff disregards it altogether and says that the extent of its obligation was to furnish the fuel and labor necessary to produce the heat. The defendant says that its obligation was to furnish whatever was necessary to produce this heat, which would include, of course, the appliances, such as boilers, pipes, etc.
When the building was originally planned the defendant apparently intended to heat it with a heating plant to be *89 installed in tbe basement under another contract. The plans for the foundation made provision for places in which boilers could be installed. Plaintiff knew this, and when entering into the contract no doubt assumed that this equipment would be available to furnish the temporary heat necessary; but nowhere in the contract does the defendant assume the obligation to furnish the equipment for the production of temporary heat.
Some time after the contract was entered into plaintiff learned that the defendant had abandoned its intention to install a heating plánt in the basement and had let a contract for the building of a central heating plant designed to furnish heat for the Post Office building and other Government buildings, and it made inquiries to ascertain whether or not heat from this heating plant would be available in time to protect the plastering, etc., from freezing. Plaintiff says Mr. Melick, the construction engineer, told it to inquire about this at the Treasury Department, and that upon doing so Mr. Martin, one of the assistants to Mr. Heath, Assistant Secretary of the Treasury and the contracting officer, assured it that there was no question but that it would get heat from the Central Heating Plant by October or November. Mr. Martin denies this. He says he could not have given it this assurance because it concerned a matter beyond his ken. He says such assurance .could have come.only from the construction engineer in charge. The construction engineer in charge was Mr. Melick, who was also the construction engineer on the Post Office building. He says unequivocally that he gave it no such assurance. He says he knew it could not be put in operation by that time and, therefore, he could not have given it any such assurance. Indeed, the plaintiff does not claim that he did.
The contract for the construction of this heating plant provided for its completion not later than January 1, 1934, which was quite some time after temporary heat would have been necessary if plaintiff decided to proceed with the work of plastering during the winter months.
Plaintiff has not carried the burden of showing that such assurances were given. We are satisfied .that they were not given by any authorized person.
*90 We do not decide what the effect would have been had such assurances been given.
There was nothing in the contract from which plaintiff could have understood that this heat would be available. When the contract was drawn it had not been determined to heat the Post Office building with heat from a central heating plant.
Plaintiff’s position finds support alone in the words of the above-quoted provision of the specifications requiring it to “provide all necessary fuel, labor, etc., necessary for the temporary heating of the building.” The extent of the obligation imposed upon plaintiff by this article of the specifications is uncertain. Looking alone at the words, “all necessary fuel, labor, etc.,” it is difficult to determine what the parties meant; but there are other provisions of the contract which place upon the plaintiff the absolute duty to protect the work from damage from cold or otherwise. Article 36 of the specifications provides:
36. The contractor shall be solely responsible for the care and protection of materials or work upon which partial payments have-been-* * * *
Paragraph 63 required that—
The contractor shall protect against damage or injury all materials and finished and unfinished work supplied under the contract, all work and materials in place and all property and materials on or about the premises * * *.
Paragraph 159 provides for the protection of concrete from frost or freezing, and expressly provides that this protection “shall include the use of temporary heat.” Section 517 provides that “No masonry shall be laid in freezing weather unless the materials are so heated or protected, or both heated and protected, that no damage from frost shall occur. The minimum of protection required shall be to maintain the work after placing at a temperature not below 40 degrees Fahrenheit for not less than 24 hours.” Section 1220 provides that “Plaster shall be protected from rapid drying and from frost.” Article 10 of the contract provides:
The contractor * * * shall be responsible for the proper care and protection of all materials delivered *91 and work performed until completion and final acceptance.
Wbat appliances the contractor was to. use to furnish this heat was not specified, except that section 60 prohibited the use of “salamanders or other portable heaters without flues” without the consent of the construction engineer. From this exception it is to be clearly implied that the contractor was to furnish the necessary appliances to produce the heat, if they were not otherwise available.
A reading of the contract leaves no doubt that the duty was on the contractor to furnish the necessary heat to keep the work from being damaged by cold. When the contract was drawn it was probably contemplated by the parties that the equipment for permanently heating the building might be available for the furnishing of temporary heat, and, if so, the contractor was permitted to use it under certain conditions, as set out in paragraph 61 of the specifications; but nowhere in the contract is there found an obligation on the part of the defendant 'that this or .other heating equipment would be available in .time to furnish the necessary temporary heat. In the absence of such an undertaking, we must conclude that the obligation of the plaintiff to furnish this temporary heat included the obligation to furnish all the instrumentalities and appliances necessary to create the heat and to disseminate it.
Certainly, the provisions of article 59 of the specifications requiring the contractor to “provide all necessary fuel, labor, etc.,” is not an express limitation upon its obligation to furnish everything necessary. The abbreviation “etc.” is broad enough to include all things “necessary for the temporary heating of the building.” The abbreviation is translated “and so forth,” “and other things,” “and the rest.” If we substitute any one of these expressions for “etc.,” the contract would read, “all necessary fuel, labor, and so forth, necessary for the temporary heating of the building”; or “all necessary fuel, labor, and other things necessary for the temporary heating of the building”; or “all necessary fuel, labor, and the rest necessary for the temporary heating of the building.” Cf. Wagner v. Brady, 130 Tenn. 554; L. & N. Ry. Co. v. Berry’s Adm., 96 Ky. 604; Shuler v. Button, 75 *92 Ia. 155; Gray v. Central R. Co. of N. J., 11 Hun. (N. Y.) 70; Potter v. Borough of Metuchen, 108 N. J. L. 447; Muir v. Kay, 66 Utah 550. It must be so construed, in view of the absolute requirement on the contractor to protect the work from cold.
Since the defendant did not assume the obligation to furnish the necessary appliances to produce the temporary heat, and since there was a definite obligation on the contractor to furnish this temporary heat, we must hold that the plaintiff is not entitled to recover for the cost of doing that which the contract required it-to do.
• . It results plaintiff’s petition must be dismissed. It is so ordered.
Madden, Judge; Jones, Judge; Littleton, Judge; and Wi-ialey, Chief Justice, concur.