LUNDSTEN, P.J.
*131 ¶1 A group of Town of Hixton landowners sued AllEnergy Hixton, LLC, seeking a permanent injunction that would stop AllEnergy from constructing a frac sand mine in the town. The circuit court granted AllEnergy's motion to dismiss the landowners' complaint. The landowners appeal.
¶2 The question here is whether the landowners' complaint states a claim. Before addressing that question, we address a preliminary matter: whether, when we assess whether there are allegations sufficient to state a claim, we should consider affidavits submitted after AllEnergy moved to dismiss the complaint. We conclude that the answer is no. Turning to whether a claim is stated within the four corners of the complaint, we first consider whether an anticipated private nuisance claim, the only claim that the landowners *461 argue they stated, is a recognized claim in Wisconsin. On that topic, we conclude that Wisconsin case law, although seldom using a *132 label such as "anticipated private nuisance," does recognize that claim. Finally, we explain why we conclude that the complaint does not state a claim for anticipated private nuisance. Accordingly, we affirm the circuit court.[1]
Background
¶3 According to the allegations in the landowners' complaint, AllEnergy planned to construct and begin operating a frac sand mine within the same year the complaint was filed, with the mine to be constructed on a site contiguous to the landowners' properties. We describe the allegations in further detail in the Discussion section below.
¶4 AllEnergy moved to dismiss. It argued that the landowners' complaint failed to state a claim upon which relief can be granted.
¶5 Before deciding the motion, the circuit court allowed the landowners and AllEnergy to submit affidavits with additional factual assertions. The court referenced the affidavits when granting AllEnergy's motion to dismiss. The court concluded that, even taking the landowners' affidavits into consideration, the landowners failed to state a claim.
*133 Discussion
¶6 As noted, we break our discussion into three parts: (1) whether we should consider affidavits submitted after AllEnergy moved to dismiss the complaint; (2) whether anticipated private nuisance is a recognized claim in Wisconsin; and (3) whether the complaint states a claim for anticipated private nuisance.[2]
A. Whether We Should Consider the Affidavits
¶7 As we have seen, after the landowners filed their complaint and after AllEnergy moved to dismiss that complaint for failure to state a claim, the circuit court allowed the parties to submit affidavits with additional factual assertions. Based on this sequence of events, both parties take the position that AllEnergy's dismissal motion should be treated as a motion for summary judgment. In particular, the landowners argue that we should consider the content of the affidavits in deciding whether the circuit court correctly dismissed the landowners' complaint. We disagree.
¶8 We readily acknowledge that, under WIS. STAT. § 802.06(2)(b),[3] when "matters outside of the *134 pleadings are presented to and not excluded by the court," a *462 motion to dismiss for failure to state a claim "shall be treated as one for summary judgment." But "[t]he first step of [a court's] summary judgment analysis is to determine whether the complaint sets forth a claim for relief." See Hoida, Inc. v. M & I Midstate Bank , 2006 WI 69, ¶ 18, 291 Wis.2d 283, 717 N.W.2d 17 ; see also Green Spring Farms v. Kersten , 136 Wis.2d 304, 317, 401 N.W.2d 816 (1987) ("[O]ur first task is to determine whether plaintiffs have stated a claim for relief."). We have previously explained that the analysis we use to address a motion to dismiss for failure to state a claim and to address the first step of our summary judgment analysis is the same-both are limited to an analysis of the complaint:
It is true that, pursuant to WIS. STAT. § 802.06(2)(b), on a motion to dismiss for failure to state a claim for relief, if matters outside the pleadings are presented and are considered by the court, the court is to treat the motion as one for summary judgment.... However, as we have already stated, the first step in summary judgment methodology is to determine if the complaint states a claim for relief. Hoida , 291 Wis.2d 283, ¶ 16 [717 N.W.2d 17]. This is the same analysis as that employed on a motion to dismiss for failure to state a claim. Prah v. Maretti , 108 Wis.2d 223, 228, 321 N.W.2d 182 (1982). Whether the motion is initially one for dismissal under WIS. STAT. § 802.06(2) and is then converted to one for summary judgment under § 802.06(2)(b), or whether it is filed in the first instance as a motion for summary judgment under § 802.08, the court does not consider matters outside the pleading until it has determined that the complaint states a claim for relief.
Broome v. DOC , 2010 WI App 176, ¶ 12, 330 Wis.2d 792, 794 N.W.2d 505.
*135 ¶9 Accordingly, although we treat AllEnergy's motion as one for summary judgment, we must reject the landowners' request that we consider their post-complaint submissions when determining, in the first step of summary judgment *463 analysis, whether the complaint states a claim.
¶10 Before moving on, we observe that the landowners do not assert that the circuit court effectively allowed them to amend their complaint to add allegations based on their affidavits. Regardless, we would reject such an assertion. The landowners did not file an amended complaint or seek leave to amend their complaint, see WIS. STAT. § 802.09, nor do the pertinent transcripts or the court's written decision indicate that the court was thinking in terms of an amendment. Further, even if the circuit court had stated that it was allowing an "amendment" to the complaint by allowing the landowners to incorporate affidavit material into their complaint, we question whether we could consider that material in the first step of our summary judgment analysis. The landowners point to no authority indicating that this would be a permissible amendment procedure.
¶11 The landowners do assert in passing that, because AllEnergy did not object to the affidavits, AllEnergy forfeited any argument opposing reference to the affidavits for purposes of addressing whether the landowners stated a claim. We reject this forfeiture argument. Although AllEnergy acquiesced in the filing of affidavits, the landowners point to nothing indicating that AllEnergy took the position that the affidavits could or should be considered for purposes of deciding *136 whether the landowners stated a claim. There may be additional reasons to reject the landowners' forfeiture argument, but what we have already said is sufficient.
¶12 Accordingly, we turn our attention to the first step of summary judgment analysis, that is, whether the landowners' complaint states a claim. As noted, the landowners argue that the complaint states a claim for anticipated private nuisance. Before examining the allegations in the complaint, we address AllEnergy's argument that Wisconsin does not recognize this type of claim.
B. Whether Wisconsin Case Law Recognizes the Claim of Anticipated Private Nuisance
¶13 AllEnergy argues that Wisconsin does not recognize the claim of anticipated nuisance. More specifically, AllEnergy admits there is some Wisconsin case law recognizing a cause of action for anticipated nuisance, but AllEnergy contends that "Wisconsin case law [overall] is unclear and in conflict regarding whether Wisconsin recognizes a cause of action for anticipatory nuisance" and that "more recent case law does not recognize a cause of action for anticipatory nuisance." We are not persuaded. As explained below, we discern no conflict and conclude that one recognized variation on a private nuisance claim is aptly referred to as an anticipated private nuisance claim.
¶14 AllEnergy acknowledges that Rogers v. John Week Lumber Co. , 117 Wis. 5, 93 N.W. 821 (1903), and Wergin v. Voss , 179 Wis. 603, 192 N.W. 51 (1923), both recognize that courts have equitable authority to enjoin an anticipated private nuisance. In Rogers , the court allowed a complaint to go forward where a *137 landowner alleged that the planned construction of a lumber mill 90 feet from his residence would create a nuisance by emitting steam, dust, dirt, and smoke that would penetrate his home and render it unfit as a place to live. Rogers , 117 Wis. at 6-10, 93 N.W. 821. In Wergin , the court explained that a court may act to stop an anticipated private nuisance when the nuisance does not yet exist but "will necessarily result" from the conduct sought to be enjoined:
The instant case presents an application to a court of equity to restrain a threatened or prospective nuisance. While a court of equity may enjoin a threatened or anticipated nuisance , public or private, it should do so only where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is [s]ought to enjoin.
Wergin , 179 Wis. at 606, 192 N.W. 51 (emphasis added).[4]
*138 ¶15 In an effort to cast doubt on this clear case law, AllEnergy points to three Wisconsin cases, Priewe v. Fitzsimons & Connell Co. , 117 Wis. 497, 94 N.W. 317 (1903), CEW Management Corp. v. First Federal Savings & Loan Ass'n , 88 Wis.2d 631, 277 N.W.2d 766 (1979), and *464 Stunkel v. Price Electric Cooperative , 229 Wis.2d 664, 599 N.W.2d 919 (Ct. App. 1999), and one federal case interpreting Wisconsin law, Borowski v. Weinhold , 347 B.R. 887 (Bankr. E.D. Wis. 2006). None of these cases support AllEnergy's position.
¶16 Starting with AllEnergy's reliance on Priewe , we first note that the case predates Wergin and, therefore, even if Priewe conflicted with Wergin , we would be bound by the later Wergin decision. See Kramer v. Board of Educ. of Sch. Dist. of Menomonie Area , 2001 WI App 244, ¶ 20, 248 Wis.2d 333, 635 N.W.2d 857 ("[W]here supreme court decisions appear to be inconsistent, or in conflict, we follow the court's most recent pronouncement."). Second, as we now explain, we see no conflict.
¶17 Priewe is not easy to read but appears primarily directed at existing conduct. The part of Priewe that matters here involves the dam-building conduct of a riparian landowner (the appellant) that allegedly harmed, or might in the future harm, others (the respondents). See Priewe , 117 Wis. at 499, 502-04, 517-19, 94 N.W. 317. The Priewe court concluded that the respondents had no claim against the appellant absent either present harm or future harm that was certain to result from activity the appellant had already engaged in. See id. at 518-19, 94 N.W. 317. Consequently, the Priewe court had no need to address whether an action could be based solely on planned future activity.
¶18 AllEnergy seemingly reads language in Priewe as stating that a claim must allege some *139 currently harmful activity. We disagree. The quote below includes the language AllEnergy relies on. In its full context, we conclude that it is clear that Priewe is consistent with Wergin :
So long as [the appellant's] actions in that regard caused no actual injury to respondents, nor created a situation from which injury to them was certain to result , they had no cause of complaint against him. Without such cause they could not have brought action against him, either in law or in equity.... There was no nuisance to be abated in any view of the case ...; therefore they manifestly had no action at law against him, because they had suffered no damage. There was no certainty that what appellant had done would cause any actionable nuisance to respondents....
Priewe , 117 Wis. at 518, 94 N.W. 317 (emphasis added). As already noted, this language from Priewe appears directed at existing conduct and whether that conduct caused existing harm or certain future harm. The Priewe language does not suggest that future conduct that is certain to result in future harm is not actionable. More to the point, AllEnergy points to nothing in Priewe that undercuts the Wergin proposition that an action may be brought when the alleged private nuisance "will necessarily result from the contemplated act or thing which it is [s]ought to enjoin." See Wergin , 179 Wis. at 606, 192 N.W. 51 (emphasis added).
¶19 We turn next to AllEnergy's reliance on CEW Management and Stunkel . These cases are more recent than Wergin , and AllEnergy apparently reads them as inconsistent with Wergin insofar as they indicate that a private nuisance claim requires existing harm and current underlying tortious conduct. But AllEnergy ignores the fact that CEW Management and Stunkel plainly addressed claims for existing private *140 nuisances, not anticipated private nuisances. See CEW Mgmt. , 88 Wis.2d at 633-34, 277 N.W.2d 766 ; Stunkel , 229 Wis.2d at 666-68, 599 N.W.2d 919. It is thus not surprising that CEW Management and Stunkel speak in terms of existing injury or "prerequisite" conduct. See CEW Mgmt. , 88 Wis.2d at 633-34, 277 N.W.2d 766 ; Stunkel , 229 Wis.2d at 666-68, 599 N.W.2d 919. We see nothing in *465 CEW Management or Stunkel that is inconsistent with Wergin 's discussion of anticipated private nuisance.
¶20 Finally, AllEnergy points to Borowski , 347 B.R. 887, a federal case interpreting Wisconsin law. Obviously, we are not bound by Borowski . But if we were, it would not matter. The pertinent statements in Borowski say no more than what is already true under Wergin . The mere possibility of a future nuisance and future resulting harm will not suffice to justify a court's intervention. Borowski states that "[t]he mere anticipation that a private nuisance may occur is not grounds for an action in private nuisance" and that "[w]here injuries are simply too remote and speculative, they cannot support a cause of action in nuisance." See Borowski , 347 B.R. at 895-96 (emphasis added).
¶21 Like AllEnergy, the dissent suggests that more recent case law undercuts Wergin . In particular, the dissent relies on Prah v. Maretti , 108 Wis.2d 223, 321 N.W.2d 182 (1982). The Prah decision is interesting because it appears that the supreme court there could have, but did not, use anticipated-private-nuisance-type language. The dissent appears to reason that we must construe Prah 's silence as a decision on the part of the supreme court to modify Wergin to the extent Wergin specifies proof requirements that the court did not repeat in Prah . Dissent, ¶58. We disagree *141 and briefly explain why Prah 's silence is not instructive.
¶22 The dissent correctly points out that Prah appears to involve an attempt to enjoin planned conduct that allegedly would create a future private nuisance. And, we agree, Prah neither refers to the claim at issue there using the term "anticipatory" or a similar term, nor does it mention the requirements of an anticipated private nuisance claim that we glean from Wergin . Dissent, ¶58. This silence, however, is not surprising. Neither the anticipatory nature of the claim nor the likelihood that the proposed activity would cause the alleged nuisance was a disputed issue. Rather, the Prah court's attention was primarily focused on two topics that might arise in both ongoing and anticipatory nuisance scenarios: (1) whether there is a property right to the sunlight and (2) whether a building that meets all applicable building codes and restrictions can ever be a nuisance. See Prah , 108 Wis.2d at 232-43, 321 N.W.2d 182.
¶23 The dissent's reliance on Prah 's silence with respect to whether Wisconsin recognizes an anticipated private nuisance cause of action is apparently based on the proposition that, each time our supreme court deals with a topic, such as private nuisance claims, the court addresses all aspects of that topic. Thus, the dissent apparently reasons, the fact that the Prah court did not characterize the claim before it as an anticipated private nuisance claim, or words to that effect, and did not address requirements regarding the degree of likelihood that the alleged nuisance would occur, means that the Prah court was overruling the parts of Wergin that address these topics. We cannot agree. It is common for opinions to focus on the dispute at hand, rather than set forth and explain everything about the area of law at issue.
*142 ¶24 The dissenting author makes the point that his research suggests that anticipated-private-nuisance-type language, such as "threatened nuisance" and "prospective nuisance," appears in just six cases, all pre-dating 1924. Dissent, ¶¶51-53. The apparent suggestion is that our supreme court has implicitly abandoned not just the use of the terminology, but has overruled or modified the cases that employ this terminology, including Wergin . But this is not how we decide whether law *466 in a case has been overturned or modified. Rather, for case law to be modified or overruled, something in a subsequent case must expressly do so or do so implicitly in the sense that the analysis in the later case cannot be reconciled with the analysis in an earlier case. The dissent points to silence but, in our view, does not identify legal reasoning in any later case that conflicts with Wergin or any of the other earlier cases in the same vein.
¶25 The dissent strains to see Prah as in conflict with Wergin when it is far more reasonable to see the two as consistent. Prah , like Wergin , recognizes that a claimant may rely on a private nuisance theory even when the alleged conduct and harm have not yet occurred. Indeed, the dissent agrees that a claimant may rely on a private nuisance theory even when the alleged conduct and harm have not yet occurred .
¶26 Thus, it is all the more curious that the dissent appears to take the position that all of the elements of all private nuisance claims are summed up in the RESTATEMENT (SECOND) OF TORTS § 822, as adopted by our supreme court. Dissent, ¶¶70-71 (citing and quoting *143 Bostco LLC v. Milwaukee Metro. Sewerage Dist. , 2013 WI 78, ¶¶ 30-31, 350 Wis.2d 554, 835 N.W.2d 160, and Milwaukee Metro. Sewerage Dist. v. City of Milwaukee , 2005 WI 8, ¶¶ 25 n.4, 32, 277 Wis.2d 635, 691 N.W.2d 658 ). If this is the position the dissent takes, we think it is problematic. For example, how can the present-tense language in the Restatement be reconciled with private nuisance claims, like the one before us and the one in Prah , alleging that proposed conduct will later cause a nuisance? The Restatement formulation as set forth in Bostco states, in pertinent part: " 'One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest....' " See Bostco , 350 Wis.2d 554, ¶ 31, 835 N.W.2d 160 (emphasis added; quoting Restatement (Second) of Torts § 822 ). If this Restatement language was the final word on the elements of all private nuisance claims, the landowners here could not state a claim because they could not, in the words of the Restatement, allege "conduct [that] is a legal cause of an invasion of [the landowners'] interest in the private use and enjoyment of land" (emphasis added). They could not make this allegation because no such conduct yet exists. Our point here is that, plainly, the Restatement is not the last word on what must be proved or pled in all circumstances.[5]
C. Whether the Landowners' Complaint States a Claim for Anticipated Private Nuisance
¶27 Whether the allegations in a complaint are sufficient to state a given claim is a question of law *144 that we review de novo. See Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 17, 356 Wis.2d 665, 849 N.W.2d 693. We "accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Id. , ¶ 19. "Bare legal conclusions set out in a complaint provide no assistance in warding off a motion to dismiss." Id. , ¶ 21. Rather, "[p]laintiffs must allege facts that, if true, plausibly suggest a violation of applicable law." Id. (emphasis added). "Factual assertions are evidenced by statements that describe: 'who, what, where, when, why, and how.' " Id. , ¶ 21 n.9 (quoted source omitted). "[W]e will dismiss a *467 complaint if, '[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court.' " John Doe 67C v. Archdiocese of Milwaukee , 2005 WI 123, ¶ 36, 284 Wis.2d 307, 700 N.W.2d 180 (quoted source omitted).[6]
¶28 In the specific context of anticipated private nuisance, Wergin provides guidance as to what type of facts must be alleged. We acknowledge, as the *145 landowners argue, that Wergin is not a pleading case but instead is a post-trial review of fact finding. See Wergin , 179 Wis. at 603-05, 607, 192 N.W. 51. Nonetheless, Wergin 's discussion of what the plaintiff must prove also tells us what must be pled. See Data Key , 356 Wis.2d 665, ¶ 2, 849 N.W.2d 693 ("substantive law drives what facts must be pled").[7]
¶29 Specifically, we glean from Wergin that a claim for anticipated private nuisance must include factual allegations that, if true, would support each of the following conclusions:
• the defendant's proposed conduct will "necessarily" or "certainly" create a nuisance; and
• the resulting nuisance will cause the claimant harm that is "inevitable and undoubted."
*146 See Wergin , 179 Wis. at 606-07, 192 N.W. 51 (quoted sources omitted).[8]
*468 ¶30 We pause here to address the dissent's assertion that the Wergin requirements that we recite above-that a plaintiff must prove that the defendant's proposed conduct will "necessarily" or "certainly" create a nuisance and that the resulting nuisance will cause the plaintiff harm that is "inevitable and undoubted"-are inconsistent with the general burden on plaintiffs seeking an injunction. The alleged inconsistency the dissent identifies is the fact that the lower general burden-proof of "a sufficient probability"-was cited with approval by our supreme court in the Bostco private nuisance case. Dissent, ¶¶97-98. The reference in Bostco that the dissent relies on is a slim reed. The Bostco court addressed an alleged ongoing nuisance, namely, an allegedly improperly maintained *147 sewerage tunnel. See Bostco , 350 Wis.2d 554, ¶¶ 1, 10-12, 835 N.W.2d 160. This ongoing nuisance situation stands in contrast to the situation in Wergin, where there was no ongoing nuisance but rather an allegation that planned activity must be enjoined to prevent an alleged future nuisance. Thus, Bostco 's reference to the general burden does not control because that case does not involve the sort of anticipated private nuisance scenario that was addressed in Wergin and that we address today.
¶31 The difference we explain above is sufficient to support the conclusion that Bostco does not modify Wergin with respect to proving the likelihood of the alleged nuisance. But we also note that there is a good reason why courts would choose to impose a higher burden for a purely anticipated nuisance. When a nuisance is ongoing at the time a plaintiff seeks an injunction, it is, obviously, usually easier to determine whether the conduct actually causes a nuisance. That is, as compared with planned conduct, it is easier to determine whether current conduct is causing a nuisance and, thus, whether that conduct will or will not continue to cause a nuisance in the future. It follows that it is reasonable to set a higher bar for plaintiffs alleging an anticipated private nuisance.
¶32 In the paragraphs that remain, we first set forth the pertinent complaint allegations. We then explain why we conclude that these allegations are not sufficient under the above legal standards.
¶33 In the language of the complaint, the landowners alleged:
6. ALLENERGY is planning to create a frac-sand mine, over-land conveyor system and rail load-out facility.
*148 7. The proposed mine site and wet-and-dry operations site are to be located contiguous to Plaintiffs' homes and/or properties.
8. The proposed mine site and wet-and-dry operations site would operate 24 hours-a-day, seven days a week.
9. Frac Sand Mines and rail load-out facilities are known to create nuisance conditions, including, but not limited to: toxic air-pollution, water pollution, noise pollution, light pollution, ground disruption and vibration due to blasting, destruction of agricultural and forested lands and landscapes and wetlands, adverse impact on endangered species (including, but not limited to the Karner Blue butterfly), depletion of ground water *469 and aquifers, traffic congestion, road damages and loss of property values.
10. Placing this mine as contemplated would unreasonably interfere with the rights of these Plaintiffs to the quiet and peaceful use and enjoyment of their rights.
11. This mine would be offensive to Plaintiffs, as it would be to any persons of ordinary and normal sensibilities in plaintiffs' circumstances; and it would endanger our health, safety and welfare.
FIRST CLAIM FOR RELIEF-PRIVATE NUISANCE[9]
12. The anticipated construction and operation of this frac-sand mine would be an invasion of and *149 interference with Plaintiffs' interests in the private use and enjoyment of their lands.
13. The anticipated construction and operation of this site would result in significant harm, and would be intolerable.
14. The proposed actions of ALLENERGY would constitute a lack of ordinary care and create an unreasonable and unnecessary invasion and interference with Plaintiffs' use and enjoyment of their properties.
15. The negligence of the Defendant, ALLENERGY, would be a direct cause of the private nuisance and resultant harm Plaintiffs would suffer.
SECOND CLAIM FOR RELIEF-DECLARATORY JUDGMENT
....
16. Plaintiffs [seek] ... a judgment declaring that locating such a mine, as is proposed by the Defendant ALLENERGY, would create [a] private nuisance; and the same would interfere with the interest of the Plaintiffs in their real estate and property interests....
....
18. ALLENERGY has expressed its intentions to proceed with their frac-sand project this year.
....
*150 THIRD CLAIM FOR RELIEF-PERPETUAL INJUNCTION
....
21. Plaintiffs have no adequate remedy at law, in that an action for damages would not compensate the Plaintiffs for the loss of their private and Constitutional rights to life, property, health and happiness.
(Footnote added.)
¶34 In analyzing these allegations, we first note that the landowners did not include terms used in cases such as Wergin . That is, the landowners did not allege that AllEnergy's proposed frac sand mine will "necessarily" or "certainly" create a private nuisance, or that the proposed mine will cause the landowners "inevitable" harm. See Wergin , 179 Wis. at 606-07, 192 N.W. 51 (quoted sources omitted).
¶35 But putting aside whether the use of these specific terms was required, we see a *470 more fundamental problem with the complaint. The landowners' limited factual allegations, even if true, are too sparse to support conclusions that AllEnergy's proposed mine operation will necessarily create a nuisance and inevitably result in harm to the landowners. In essence, the pertinent factual allegations consist of three assertions:
• the mine site will be located contiguous to the landowners' "homes and/or properties";
• the mine will operate around the clock seven days per week; and
• frac sand mines in general are "known to" create nuisance conditions and serious resulting harms, including but not limited to several types of pollution and other ills.
*151 ¶36 Taking these allegations as true, and drawing reasonable inferences in favor of the landowners, the most that can be said is that there is some unknown probability that AllEnergy's proposed mine will create nuisance conditions resulting in various harms, including harm to nearby property owners such as the landowners here. For example, the landowners fail to allege geographical or topographical facts that would appear to be essential. There are no allegations of pertinent distances between active features of the mine, once in operation, and pertinent structures or activities on their respective properties, or any other allegations that would tie any particular alleged harm to any particular landowner.
¶37 Apart, perhaps, from their allegation that the proposed mine will operate around the clock seven days per week, the landowners provide nothing explaining how or why AllEnergy's proposed mine is certain to create one or more of the nuisance conditions described, or how or why such a condition will inevitably cause harm to one or more of these landowners. That is, the landowners fail to allege "inevitable and undoubted" specific harms to their specific properties from this specific mine, once in operation. Rather, the landowners rely primarily on a general and vague allegation as to what frac sand mines in general are "known to" do.[10]
*471 *152 ¶38 We need not attempt to determine what level of specificity would be sufficient in all circumstances. Each case will depend on its facts. What we can say here is that the landowners provide virtually no specificity tailored to AllEnergy's proposed mine or their particular circumstances.
*153 ¶39 In short, the complaint falls short on factual allegations that, if true, would demonstrate the level of certainty or inevitability required to show an anticipated private nuisance. Therefore, the complaint fails to state a claim.
Conclusion
¶40 For the reasons stated above, we affirm the circuit court's order dismissing the landowners' complaint against AllEnergy.
By the Court. -Order affirmed.
¶41 I respectfully dissent.
I. INTRODUCTION.
¶42 The majority opinion bases its analysis on a ninety-five-year-old case, Wergin v. Voss , 179 Wis. 603, 192 N.W. 51 (1923). That opinion concerned the level of proof required, at an evidentiary hearing, to obtain an injunction for an alleged nuisance that was proposed but not yet erected. Id . at 606, 192 N.W. 51. By relying on Wergin to determine what the landowners[1] must allege in their complaint in order to state a claim, the majority opinion errs in several general respects which affect the result.
¶43 First, the majority opinion holds that "anticipated private nuisance" is a claim recognized in Wisconsin law. However, a cause of action known as "anticipated private nuisance" is not recognized in Wisconsin law at this time. Instead, Wisconsin law *154 recognizes both private nuisance and public nuisance, but not "anticipated private nuisance" with elements distinct from the current private nuisance elements.
¶44 Second, by adopting language from Wergin , the majority opinion necessarily takes the position that developments in nuisance law over the last ninety-five years, including adoption of significant parts of the Restatement (Second) of Torts by the Wisconsin Supreme Court, apply to all aspects of nuisance law-except the one area mentioned in Wergin that the majority opinion proposes is a cause of action for "anticipated private nuisance." There, according to the majority opinion, Wisconsin law has been frozen in place for almost 100 years. However, that is not accurate. According to Wisconsin case law issued after Wergin , for an alleged private nuisance that has not yet been constructed, the Wisconsin Supreme Court analyzes that cause of action as a private nuisance claim with elements adopted from the Restatement (Second) of Torts.
¶45 Third, Wergin concerns the level of proof required at an evidentiary hearing, based on standards in effect ninety-five years ago, to enjoin an alleged nuisance that was not yet erected. Wergin , 179 Wis. at 606, 192 N.W. 51. However, Wergin does not discuss pleading requirements for a private nuisance claim or the elements of a private nuisance cause of action. Therefore, its holding is not applicable to whether the landowners' complaint states a cause of action.
*472 ¶46 Fourth, the elements and burdens of persuasion taken from Wergin by the majority opinion are not consistent with current private nuisance law in Wisconsin. The analysis in the majority opinion does not adopt, and recognizes briefly in response to this *155 dissent, case law developments over the last ninety-five years regarding private nuisance law.
¶47 Finally, and in contrast to the majority opinion, I conclude that the landowners' complaint alleging a private nuisance claim states a claim upon which relief can be granted.[2] In a related vein, the pleading requirements enunciated in the majority opinion require the landowners to plead in their complaint a level of proof sufficient to obtain an injunction. However, Wisconsin law does not require a party to plead, in their complaint, evidentiary requirements necessary to obtain an injunction as a remedy.
II. ANTICIPATED PRIVATE NUISANCE IS NOT A RECOGNIZED CAUSE OF ACTION IN WISCONSIN.
¶48 The majority opinion opines that "anticipated private nuisance" is a recognized claim in Wisconsin. Majority, ¶2. I disagree.[3]
¶49 The majority opinion comes to the conclusion that there is a recognized cause of action for "anticipated private nuisance" although that "label" is *156 "seldom" used. Majority, ¶2. That understates the point. The language in Wergin , relied on heavily by the reasoning in the majority opinion, has not been cited or relied on for at least seventy-five years and, instead, has been replaced with the terms, analyses and elements regarding private nuisance mentioned later in this dissent.
¶50 Footnote two in the majority opinion states that "anticipated" nuisance is "synonymous" with terms such as "threatened" nuisance, "prospective" nuisance, and "anticipatory" nuisance. A search of Wisconsin case law shows that those terms are unknown in Wisconsin case law authorities in the last ninety-five years.
¶51 Other than in Wergin , the phrase "threatened nuisance" appears in only six reported cases, all from 1923 or earlier. Piper v. Ekern , 180 Wis. 586, 592, 194 N.W. 159 (1923) ; Priewe v. Fitzsimons & Connell Co. , 117 Wis. 497, 519, 94 N.W. 317 (1903) ; Linden Land Co. v. Milwaukee Elec. Ry. & Lighting Co. , 107 Wis. 493, 507, 83 N.W. 851 (1900) ; State ex rel. Hartung v. City of Milwaukee , 102 Wis. 509, 512, 78 N.W. 756 (1899) ; State v. Carpenter , 68 Wis. 165, 173, 31 N.W. 730 (1887) ; Pettibone v. Hamilton , 40 Wis. 402, 417 (1876). The phrase "prospective nuisance" appears only in the Wergin opinion. Wergin , 179 Wis. at 606, 192 N.W. 51. The same is true with the phrase "anticipated nuisance." Id.
*473 ¶52 A wider search of potentially pertinent phrases leads to the same conclusion. The phrase "threatened public nuisance" appears in Wisconsin case law two times and only before 1900.
*157 Carpenter , 68 Wis. at 172, 31 N.W. 730 ; Hartung , 102 Wis. at 512, 78 N.W. 756. The phrases "anticipatory nuisance," "anticipatory private nuisance," "anticipatory public nuisance," "prospective private nuisance," "prospective public nuisance," "threatened private nuisance" and "threatened tort" do not appear in Wisconsin case law.
¶53 The language in Wergin relied on by the majority opinion about conduct "necessarily" or "certainly" creating a nuisance, and that the harm must be "inevitable and undoubted," has not been cited again by the Wisconsin Supreme Court, except in Wasilewski v. Biedrzycki , 180 Wis. 633, 639, 192 N.W. 989 (1923). (Although one Wisconsin Supreme Court opinion may have made an allusion to one of those terms in a string cite in 1940. See Hasslinger v. Village of Hartland , 234 Wis. 201, 210, 290 N.W. 647 (1940).) So, in at least the last seventy-five years, the Wisconsin Supreme Court has not relied on Wergin in the manner the majority opinion has.
A. Private and Public Nuisance.
¶54 The majority opinion recognizes a cause of action of "anticipated private nuisance"[4] that, as will be seen, has been superseded (assuming the cause of action ever existed) by significant developments in Wisconsin law. The Wisconsin Supreme Court instructs that there are two types of nuisance recognized in Wisconsin law, public and private.
¶55 "There are two broad categories of nuisance that derive their distinctions from the types of rights or interests invaded."
*158 Bostco LLC v. Milwaukee Metro. Sewerage Dist. , 2013 WI 78, ¶ 28, 350 Wis.2d 554, 835 N.W.2d 160 (citing Milwaukee Metro. Sewerage Dist. v. City of Milwaukee , 2005 WI 8, ¶ 24, 277 Wis.2d 635, 691 N.W.2d 658 ). These categories are known as "public nuisance and private nuisance." Id. (citing RESTATEMENT (SECOND) OF TORTS ch. 40, intro. note ( AM. LAW INST. 1979) and WIS. STAT. ch. 844). "It is the type of harm suffered or interest invaded that determines whether the nuisance is a public or a private nuisance." Id. (citing Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶26, 691 N.W.2d 658 ).
¶56 Our supreme court has delineated the distinction between public and private nuisance.
A private nuisance involves interference with or disturbance of the use and enjoyment of an individual's land. Those who have property rights or privileges with regard to the use or enjoyment of land impacted by a nuisance may maintain a claim for private nuisance. 'A public nuisance is an unreasonable interference with a right common to the general public,' and does not necessarily involve the interference with the use or enjoyment of land.
Butler v. Advanced Drainage Sys., Inc. , 2006 WI 102, ¶ 28, 294 Wis.2d 397, 717 N.W.2d 760 (internal citations omitted).
III. PRAH AND THE RESTATEMENT (SECOND) OF TORTS.
¶57 The majority opinion contends that the landowners' cause of action must be analyzed as "anticipated private nuisance" with elements the majority opinion believes are in Wergin concerning that purported cause of action. However, Wisconsin case law more recent than Wergin and *474 the Restatement *159 (Second) of Torts demonstrate that the landowners' cause of action should be analyzed as it is denominated in the complaint, as a private nuisance and not as an "anticipated private nuisance."
¶58 Prah v. Maretti , 108 Wis.2d 223, 321 N.W.2d 182 (1982), is not considered by the majority opinion-other than in response to this dissent-but is pertinent in determining whether there is a separate "anticipated private nuisance" cause of action. Prah is an example of a cause of action for private nuisance in which the nuisance has not yet occurred. However, Prah does not analyze the cause of action as an "anticipated private nuisance" (or any similar term) and does not use the elements taken from Wergin which form the basis for the majority opinion. Instead, Prah analyzes the matter simply as a private nuisance.
¶59 The complaint alleged that the Prah house had a solar collection system which included collectors on the roof. After Prah built the solar-heated house, Maretti purchased the lot adjacent and "commenced planning construction of a home." Prah , 108 Wis.2d at 225, 321 N.W.2d 182. Prah advised Maretti that, if the house were built at the proposed location, defendant's house "would substantially and adversely affect the integrity of plaintiff's solar system." Id. Prah contended that Maretti's "proposed construction" (the Wisconsin Supreme Court twice refers to it as "proposed construction" and once as the "proposed house") "constitutes a common law private nuisance." Id. , at 224, 226-27, 229, 242, 321 N.W.2d 182. The complaint demanded injunctive relief (although the nuisance had not yet occurred) and damages. Id. at 225, 321 N.W.2d 182.
¶60 Our supreme court considered whether the complaint "states a claim for relief based on *160 common law private nuisance." Id. , at 230, 321 N.W.2d 182. The court relied on the definitions and analysis of private nuisance in the Restatement (Second) of Torts. Id. , at 231, 240-41, 321 N.W.2d 182. After doing so, the supreme court concluded: "Accordingly we hold that the plaintiff in this case has stated a claim under which relief can be granted." Id. , at 240, 321 N.W.2d 182.
¶61 The Wisconsin Supreme Court, in a case which (according to the majority opinion) should have been analyzed as "anticipated private nuisance" using the requirements of Wergin , ignored Wergin and analyzed the matter solely as a private nuisance claim. Unlike the majority opinion's reliance on Wergin , the court did not hold that Prah was required to show that Maretti's conduct will "necessarily" or "certainly" create a nuisance. Also, the Wisconsin Supreme Court did not hold that such nuisance must "inevitably and undoubtedly" cause harm to Prah.
¶62 The majority opinion's conclusion is that there is a recognized cause of action for "anticipated private nuisance" in circumstances in which the nuisance is proposed but has not yet occurred. However, I suggest that the majority opinion's conclusion does not hold up because of the facts of Prah (a proposed building which would be a nuisance if completed) and the analysis in Prah that courts should analyze that fact situation as a private nuisance claim.
¶63 To confirm the point, the Restatement (Second) of Torts also recognizes that a private nuisance that has not yet occurred can be prevented through a permanent injunction. RESTATEMENT (SECOND) OF TORTS § 822 cmt. d. Section 822 of the Restatement (Second) of Torts concerns private nuisance and was adopted by the Wisconsin Supreme Court. See the Discussion, below.
*475 *161 IV. WERGIN DOES NOT CONCERN ELEMENTS OF A NUISANCE CLAIM OR PLEADING REQUIREMENTS.
¶64 The holding of Wergin does not concern the elements of a private nuisance cause of action or pleading requirements to state such a cause of action and, as a result, is not applicable to the question of whether the landowners' complaint states a valid claim. Instead, the language in Wergin relied on by the majority opinion concerns the requirements to obtain a permanent injunction for a nuisance which has not yet occurred.[5] Wergin , 179 Wis. at 606-07, 192 N.W. 51 ("While a court of equity may enjoin a threatened or anticipated nuisance...." "The general rule is that an injunction will only be granted...." "To authorize an injunction, it must be established...." "We think it quite clear that the contemplated injury does not appear with that degree of certainty necessary to justify the interference of a court of equity at this time."). As the majority opinion notes, Majority, ¶14, Wergin states "that courts have equitable authority to enjoin an anticipated private nuisance." But, Wergin does only that.
¶65 For those reasons, the Wergin opinion does not announce the elements of a cause of action for any type of nuisance or the pleading requirements required to state a valid cause of action.
¶66 The landowners alleged in their complaint a private nuisance claim. For an understanding of the pleading requirements for that cause of action, I review in the next section both the elements of that cause *162 of action and the manner in which the cause of action is to be analyzed under Wisconsin law.
V. PRIVATE NUISANCE.
¶67 By focusing on the language in a ninety-five-year-old case, the majority opinion ignores decades of developments in private nuisance law since that time. In effect, the majority opinion reasoning requires that the purported cause of action of "anticipated private nuisance" exists untouched and outside the development of private nuisance law over the last ninety-five years. However, there is nothing which leads to the conclusion that the Wisconsin Supreme Court meant to exclude from the development of private nuisance law fact situations in which the nuisance has not yet occurred but was threatened.
¶68 Other than a brief mention in response to this dissent, one can not tell from the majority opinion reasoning that the Wisconsin Supreme Court has adopted the Restatement (Second) of Torts regarding nuisances, or that there has been any other applicable case law since Wergin was issued in 1923. However, as will be shown, Wisconsin law regarding private nuisance has changed greatly over the last ninety-five years. The elements taken from Wergin by the majority opinion are not consistent with the requirements of private nuisance law today. As a result, the majority opinion gets it wrong regarding the elements of the private nuisance claim pled in the landowners' complaint and the burden of persuasion required for that claim.
¶69 By not relying on developments in the law of private nuisance in the last decades, the elements stated in the majority opinion for the purported cause of action of "anticipated private nuisance" fail to answer *163 basic questions which leave parties and circuit courts unsure of how to proceed. *476 A. Elements of Private Nuisance.
¶70 Our supreme court has "accepted the Restatement (Second) of Torts' characterization of private nuisance as 'a nontrespassory invasion of another's interest in the private use and enjoyment of land.' " Bostco , 350 Wis.2d 554, ¶ 30, 835 N.W.2d 160 (citing Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶ 25 n.4, 691 N.W.2d 658 ); see RESTATEMENT (SECOND) OF TORTS , § 821D. Beginning in 1974 with State v. Deetz , 66 Wis.2d 1, 224 N.W.2d 407 (1974), the Wisconsin Supreme Court adopted and relied on the Restatement (Second) of Torts regarding nuisance claims. The Wisconsin Supreme Court has stated the following:
Wisconsin has explicitly adopted the definition of private nuisance found in the Restatement (Second) of Torts § 821. Wisconsin's definition of public nuisance also comports with the Restatement (Second) of Torts § 821B. In addition, Wisconsin has adopted the Restatement (Second) of Torts § 822. This court has also previously relied on other sections of the Restatement governing nuisances [including Restatement (Second) of Torts §§ 825 and 840 ].
Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶ 25 n.4, 691 N.W.2d 658 (internal citations omitted).
¶71 Our supreme court has adopted the elements of a private nuisance claim based on negligence from the Restatement:
Wisconsin law employs the following directive for those seeking to establish liability for a private nuisance:
*164 One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is ...
....
(b) [U]nintentional and otherwise actionable under the rules controlling liability for negligent ... conduct....[6]
Bostco , 350 Wis.2d 554, ¶ 31, 835 N.W.2d 160 (citing RESTATEMENT (SECOND) OF TORTS , § 822 ; Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶ 32, 691 N.W.2d 658 ).
¶72 Here, AllEnergy's negligence has been pled by the landowners as the potentially offending conduct. As a result, in this context, the elements of the landowners' private nuisance claim are the following:
• AllEnergy's proposed conduct will be a legal cause of
• An invasion of the landowners' interests in the private use and enjoyment of their land; and
• That invasion will be unintentional and otherwise actionable under the rules controlling liability for negligent conduct.
See id.
¶73 For context, the elements in the majority opinion will now be mentioned. In contrast to the current requirements in Wisconsin law for a private *165 nuisance claim based on negligence, the majority opinion states that it "glean[s] from Wergin that a claim for anticipated private nuisance must include factual allegations that, if true, will support each of the following conclusions":
• AllEnergy's proposed conduct will
• "Necessarily" or "certainly" create
• A nuisance.
Also, the majority opinion takes from Wergin that an "anticipated private nuisance" must allege:
*477 • That the nuisance will "inevitably and undoubtedly" cause
• Harm to the landowners.
(See Majority, ¶29 citing Wergin , 179 Wis. at 606-07, 192 N.W. 51.)
B. Negligence and Liability.
¶74 The elements stated in the majority opinion, at paragraph 29, refer only to "conduct."[7] I believe the majority opinion errs in this respect.
¶75 In analyzing the elements of the landowners' cause of action, it is important to note that negligent conduct is required, not simple "conduct" as is stated in the majority opinion. The distinction is important.
*166 ¶76 An essential element of a private nuisance claim grounded in negligence is proof that the underlying conduct is, as stated above, "otherwise actionable under the rules controlling liability for negligent ... conduct." RESTATEMENT (SECOND) OF TORTS § 822 ; see also Bostco , 350 Wis.2d 554, ¶ 31, 835 N.W.2d 160 ; Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶ 44, 691 N.W.2d 658 ; . "[T]he concepts of negligence and nuisance overlap" when a nuisance is based on negligent conduct. Milwaukee Metro. Sewerage Dist. , 277 Wis.2d 635, ¶ 43, 691 N.W.2d 658. But, the two concepts are distinct: "The point is that nuisance is a result and negligence is a cause...." Id. (quoting Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co. , 2002 WI 80, ¶ 27 n.22, 254 Wis.2d 77, 646 N.W.2d 777 ). "While it is necessary to prove the underlying tortious conduct before liability may attach for a nuisance, it is incorrect to speak of nuisance 'as itself a type of liability-forming conduct.' " Id. , ¶ 26, 646 N.W.2d 777 (quoting RESTATEMENT (SECOND) OF TORTS § 822 cmt. c).
¶77 Consistent with that, our supreme court has also held that there is a distinction between a nuisance and liability for a nuisance:
At the outset, it is imperative to distinguish between a nuisance and liability for a nuisance, as it is possible to have a nuisance and yet no liability. A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause the harm. The Restatement (Second) of Torts illustrates this point:
[F]or a nuisance to exist there must be harm to another or the invasion of an interest, but there need not be liability for it. If the conduct of the defendant is not of a kind that subjects him to liability ... the nuisance exists, but he is not liable for it .
*167 Id. , ¶ 25 (quoting RESTATEMENT (SECOND) OF TORTS § 821A cmt. c); see also City of Milwaukee v. NL Indus. , 2008 WI App 181, ¶ 22, 315 Wis.2d 443, 762 N.W.2d 757.
¶78 So, pursuant to Wisconsin law, there must be "actionable," "negligent ... conduct," alleged for the landowners to state a valid cause of action in this context. But, the majority opinion elements taken from Wergin Majority, ¶29, do not require negligent, actionable conduct. Instead, those elements require only "conduct" of AllEnergy that "will ... create a nuisance" and that nuisance must cause harm to the landowners.
¶79 To make matters more complex, while the majority opinion's elements use the word "conduct," that word does not appear in Wergin . See *478 Wergin , 179 Wis. at 603-09, 192 N.W. 51. Accordingly, if anyone should use the majority opinion's reasoning, they would not know whether to read the current requirements of Wisconsin law, mentioned above, into the majority opinion elements or whether the majority opinion requires, as the majority opinion apparently believes Wergin says, that any type of "conduct" is enough, regardless of whether it was actionable or negligent.
¶80 The majority opinion's use of the word "conduct" is not consistent with current requirements of Wisconsin law regarding a private nuisance cause of action. "Conduct," with nothing more, is not sufficient to subject AllEnergy to liability under Wisconsin law. Instead, there must be an allegation of an underlying tortious act which causes the harm. The elements in the majority opinion do not have that requirement and, as a result, cause confusion as to Wisconsin law.
C. Causation.
¶81 Another step required by Wisconsin law in a private nuisance cause of action is to "determine *168 whether the complained of conduct was a cause of creating the nuisance." Butler , 294 Wis.2d 397, ¶ 29, 717 N.W.2d 760 (emphasis added); see also WIS JI- CIVIL 1922 ("Fourth, (defendant)'s negligence caused the private nuisance. This does not mean that (defendant)'s negligence was 'the cause' but rather 'a cause' because a private nuisance may have more than one cause. Someone's negligence caused the private nuisance if it was a substantial factor in producing the nuisance.").
¶82 Therefore, to be actionable, the negligent conduct of AllEnergy mentioned in the complaint need only be "a cause" of the nuisance. To state, as the majority does, that AllEnergy's conduct must "necessarily" or "certainly" create the nuisance is antithetical with the possibility that there may be more than one cause of the private nuisance. In addition, the jury instruction, relying on Wisconsin law, states only that the negligence causes the private nuisance if it is "a substantial factor" in producing the nuisance. There is no requirement of necessity or certainty in that description of the cause of a private nuisance.
¶83 So, the element cited in the majority opinion regarding causation of the nuisance is incorrect and overstates the causation requirement under Wisconsin law for the landowners' cause of action.
D. Private Use and Enjoyment of Land, and Harm.
¶84 The elements for the cause of action of private nuisance require that there be an "invasion" of the landowners' "interest in the private use and enjoyment of land." As will be seen, and as is relevant to the consideration of the landowners' complaint, the invasion may be an act that does not physically occupy the landowners' property, the required disturbance of the *169 landowners' interest may be any disturbance, and the harm need only be "more than slight inconvenience or petty annoyance."
¶85 "Physical occupation of the property of another is not necessary to a nuisance claim." Bostco , 350 Wis.2d 554, ¶ 31, 835 N.W.2d 160. ''For example, invasions of noxious odors can rise to the level of a nuisance.'' Id. "The primary function of nuisance as a separate topic in the law of torts is to mark out the area within which it is unreasonable for one to subject his neighbors or the public to noise, vibrations, fumes, immorality or the risk of physical harm." Physicians Plus , 254 Wis.2d 77, ¶ 2 n.1, 646 N.W.2d 777 (quoting Warren A. Seavey, Nuisance: Contributory Negligence and Other Mysteries , 65 HARV. L. REV. 984, 995 (1952) ).
¶86 In regard to "invasion" of another's interest, our supreme court has held: "The *479 phrase 'interest in the private use and enjoyment of land' as used in sec. 821D is broadly defined to include any disturbance of the enjoyment of property." Prah , 108 Wis.2d at 232, 321 N.W.2d 182 (emphasis added). See also RESTATEMENT (SECOND) OF TORTS § 821D. The Restatement reads in applicable part:
''Interest in use and enjoyment'' also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself.
RESTATEMENT (SECOND) OF TORTS § 821D cmt. b; Apple Hill Farms Dev., LLP v. Price , 2012 WI App 69, ¶ 13, 342 Wis.2d 162, 816 N.W.2d 914 ; see also WIS. STAT. § 844.01(1) - (3).
*170 ¶87 The Restatement (Second) of Torts explains the level of harm[8] required for a private nuisance claim to be actionable and is consistent with the "any disturbance" language just noted. Section 821F states:
There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.
.....
c. Significant harm . By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance . The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or a private nuisance.
RESTATEMENT (SECOND) OF TORTS § 821F cmt. c (emphasis added).
¶88 As noted, the majority opinion mentions that there must be "harm" to the landowners. However, the use of that word is untethered to any definition, and the majority opinion does not explain whether it is relying on the definition of "harm" as being "significant" as stated in the Restatement (Second) of Torts § 821F, or if some other definition of harm *171 from 100 years ago should be used. Accordingly, because the majority opinion does not recognize significant developments in Wisconsin law over the decades, it leaves parties and circuit courts unsure of how to proceed.
¶89 Beyond those problems, I suggest that the majority opinion analysis necessarily fails because of the levels of proof it relies on from Wergin . Those are inconsistent with a cause of action for private nuisance based on negligent conduct as recognized today in Wisconsin law. Those concerns will be mentioned in the next section.[9]
*480 VI. THE BURDEN OF PERSUASION IMPOSED BY THE MAJORITY OPINION IS INCORRECT.
¶90 The majority opinion states that the elements of an "anticipated private nuisance" require that AllEnergy's proposed conduct "will 'necessarily' or 'certainly' " create a nuisance and the nuisance will "inevitably" and "undoubtedly" cause harm to the landowners. Majority, ¶29. I believe that takes the majority opinion down a wrong path because those words and phrases taken from Wergin are not consistent with applicable Wisconsin law.
¶91 This is not a hypothetical problem with the majority opinion. It continually returns to whether the *172 terms used in Wergin ("necessarily," "certainly," "inevitably," and "undoubtedly") are used in the landowners' complaint. As one example, paragraph 34 of the majority opinion states: "In analyzing these allegations, we first note that the landowners did not include terms used in cases such as Wergin ." In fact, even when the majority opinion states that it is "putting aside" those terms Majority, ¶35, the majority opinion in the same paragraph then returns to whether the allegations will "necessarily create a nuisance" and "inevitably result in harm to the landowners."
¶92 As discussed, this is a negligence case because that is the proposed tortious act mentioned in the landowners' private nuisance claim. Of course, the burden of persuasion[10] to prove negligence is the preponderance of the evidence standard. See Nommensen v. American Cont'l Ins. Co. , 2001 WI 112, ¶¶ 1, 16, 25, 246 Wis.2d 132, 629 N.W.2d 301.
¶93 The terms "will necessarily or certainly," "inevitably" and "undoubtedly" all concern causation. Wisconsin law requires only that causation be shown to the preponderance of the evidence standard. See WIS JI- CIVIL 1500; Merco Distrib. Corp. v. Commercial Police Alarm Co. , 84 Wis.2d 455, 460, 267 N.W.2d 652 (1978) (noting that, as to causation, the plaintiff must show only more than that the "probabilities are at best evenly balanced"). Similarly, as noted earlier, the complained of proposed conduct need only be "a cause"
*173 rather than "the cause" of the nuisance. As well, the negligent conduct need only be a "substantial factor" in causing the nuisance.
¶94 But, the majority opinion's burdens of persuasion to prove the elements of the cause of action of "anticipated private nuisance" are at least as stringent as that in the clear and convincing evidence standard, otherwise known as the middle burden of proof. That burden is said to mean "clear weight of the evidence" or "clearly more probable than not." Klipstein v. Raschein , 117 Wis. 248, 94 N.W. 63 (1903). Our supreme court has said that clear, satisfactory and convincing evidence refers to the quality or convincing power of the evidence necessary to produce the greater certainty a reasonable certitude required. Kuehn v. Kuehn , 11 Wis.2d 15, 29-30, 104 N.W.2d 138 (1960). The clear and convincing evidence standard is not used in negligence actions, or regarding causation, but is reserved for "the class of cases involving *481 fraud, of which undue influence is a specie, gross negligence, and civil actions involving criminal acts." Wangen v. Ford Motor Co. , 97 Wis.2d 260, 299, 294 N.W.2d 437 (1980) (quoting Kuehn , 11 Wis.2d at 26, 104 N.W.2d 138 ).
¶95 The elements of a private nuisance cause of action based on negligent conduct need not be proven (or pled) to the standard of clear and convincing evidence. Yet, the terms used in the majority opinion regarding the level of proof required far exceed the standards in Wisconsin law and are another example of the majority opinion going outside applicable Wisconsin authorities.
¶96 Moreover, (as mentioned earlier) Wergin concerns only standards in place about 100 years ago to obtain an injunction in certain situations. But, the majority analysis, I believe, missteps regarding what *174 is currently required to obtain an injunction to prevent a private nuisance which has not yet occurred.
¶97 In general, the standards to obtain a permanent injunction were set out by the Wisconsin Supreme Court in Pure Milk Products Cooperative v. National Farmers Organization :
The injunction is a preventive order looking to the future conduct of the parties. To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of will and injure the plaintiff....
....
... [W]e agree with AMPI's position that an injunction is designed to prevent injury, not to compensate for past wrongs, and that an injunction may issue merely upon proof of a sufficient threat of future irreparable injury. This court has held that to establish a sufficient probability that a defendant's conduct will injure a plaintiff it is not necessary for the plaintiff to wait until some injury has been done; equity will prevent, if possible, an injury. Threat of an injury is sufficient.
Pure Milk Prods. Coop. v. National Farmers Org. , 90 Wis.2d 781, 800, 802, 280 N.W.2d 691 (1979) (internal citations omitted) (emphasis added). The standards enunciated in Pure Milk Products have been cited with approval by the Wisconsin Supreme Court in the context of a private nuisance claim. Bostco , 350 Wis.2d 554, ¶ 60, 835 N.W.2d 160.
¶98 The "sufficient probability" required under Wisconsin law currently to obtain a permanent injunction is inconsistent with the standards of "necessarily," "certainly," "inevitable," and "undoubted" stated in the majority opinion.
*175 ¶99 For those reasons, I respectfully suggest that the majority opinion contains errors regarding the current state of Wisconsin law.
¶100 I now consider whether the landowners' complaint states a cause of action.
VII. THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.
¶101 I conclude that, whether the test is the more general rule regarding the sufficiency of a complaint under WIS. STAT. ch. 802, or whether the test is the more specific requirement regarding a nuisance complaint under WIS. STAT. ch. 844, the landowners have stated a claim upon which relief can be granted.
A. Requirements for Pleadings Pursuant to Chapter 802 and Applicable Case Law.
¶102 The majority opinion relies on Data Key Partners v. Permira Advisers LLC , 2014 WI 86, 356 Wis.2d 665, 849 N.W.2d 693, for its analysis of the sufficiency *482 of the landowners' complaint. But, Data Key Partners did not overrule all previous holdings of Wisconsin law regarding what must be alleged in a complaint to survive a motion to dismiss. After Data Key Partners , this court has observed the holding of Data Key Partners in the context of previous applicable case law:
We liberally construe pleadings to achieve substantial justice between the parties. To that end, we accept as true all well-pleaded facts in a complaint, as well as the reasonable inferences therefrom. Factual allegations in a complaint, however, must be " 'more than labels and conclusions, and a formulaic recitation of *176 the elements of a cause of action.' " "[I]f it appears to a certainty that no relief can be granted under any set of facts that the plaintiff can prove in support of [his] allegations[,]" we will dismiss the complaint.
Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee Cty. , 2016 WI App 56, ¶ 5, 370 Wis.2d 644, 883 N.W.2d 154 (internal citations omitted) (emphasis added). So, while mindful of the holding of Data Key Partners , this court still holds that a motion to dismiss can be granted only if it appears to a certainty that no relief can be granted under any set of facts the landowners can prove in support of their complaint.
¶103 Data Key Partners set forth applicable statutes regarding sufficiency of a complaint which add context to the discussion:
WISCONSIN STAT. § 802.02(1) sets the requirements for a complaint if it is to withstand a motion to dismiss for failure to state a claim. Section 802.02(1)(a) provides:
....
(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.
Data Key Partners , 356 Wis.2d 665, ¶ 20, 849 N.W.2d 693 (emphasis added).
B. Chapter 844.
¶104 The provisions of WIS. STAT. ch. 844 relate to the requirements for a complaint in a nuisance claim. Some background puts this in perspective.
¶105 The Wisconsin Supreme Court has recognized the importance of Chapter 844 regarding private nuisances and injunctive relief.
*177 Bostco , 350 Wis.2d 554, ¶ 70, 835 N.W.2d 160. Bostco held that portions of Chapter 844 provided "statutory procedure for seeking abatement of private nuisances" and those statutory provisions "specifically speak to abatement of private nuisances." Id. , ¶¶ 4, 26.
¶106 After tracing the history of Chapter 844, this court concluded that WIS. STAT. § 844.01[11] "was enacted as a 'recodification of the law on real property' and that it sets forth 'real property remedies obtainable by a lawsuit and the legal procedure *483 to be used to obtain remedies.' " Schultz v. Trascher , 2002 WI App 4, ¶ 27, 249 Wis.2d 722, 640 N.W.2d 130 (2001) (quoting Shanak v. City of Waupaca , 185 Wis.2d 568, 596, 518 N.W.2d 310 (Ct. App. 1994) ). This court further held that § 844.01(1)"is a remedial and procedural statute." Id.
¶107 WISCONSIN STAT. ch. 840 interacts with real estate-related provisions in Chapters 840-846. Chapter 840 concerns general provisions regarding real property actions. WISCONSIN STAT. § 840.02 states: "Except as otherwise provided in chs. 840 to 846 , the general rules of practice and procedure in chs. 750 to *178 758 and 801 to 847 shall apply to actions and proceedings under chs. 840 to 846." (Emphasis added.) Here, because Chapter 844 concerns procedural issues regarding nuisances, and because the general rules for pleading in WIS. STAT. ch. 802 do not apply if a more specific provision of Chapter 844 applies, it is pertinent to review WIS. STAT. § 844.16 which refers to requirements for a complaint in a nuisance action. WISCONSIN STAT. § 844.16 states: "The complaint shall indicate each plaintiff's interest, the interests of all persons entitled to possession, the nature of the alleged injury and, if damages are asked, shall allege the percentages and amounts claimed by each person claiming an interest." (Emphasis added.)
¶108 As relevant here, the legislative intent stated in WIS. STAT. § 844.16 is that there is a less stringent requirement for a nuisance complaint than the standards set forth in Chapter 802 which form the basis for the Data Key Partners reasoning.
C. Analysis.
¶109 I conclude that, whether the analysis relies on the current pleading requirements set forth as mentioned above in Milwaukee Deputy Sheriffs' Ass'n , 370 Wis.2d 644, ¶ 5, 883 N.W.2d 154, or under the requirements of WIS. STAT. § 844.16, the complaint states a claim upon which relief can be granted.
¶110 To be fair to the majority opinion, the complaint is not a model of clarity, and I will mention some concerns. The complaint mentions various activities of AllEnergy, but does not tie some of those activities to the cause of action. As examples, paragraph 6 of the complaint mentions that AllEnergy is planning to create a "frac-sand mine," and "over-land *179 conveyer system and rail load-out facility." However, the over-land conveyer system is never mentioned again in the complaint. Paragraph 7 of the complaint only states that the mine site and the wet-and-dry operation site are located contiguous to the landowners' homes. Yet, there is no discussion of what exactly the wet-and-dry operation site is, or if it is somehow connected with the mine. Paragraph 8 states that the mine site and the wet-and-dry operations will operate twenty-four hours a day. However, paragraph 9 only states that the frac-sand mine and rail load-out facilities "are known to create nuisance conditions." Then, each of paragraphs 10 through 16 clearly talk about what will happen because of the "mine" (more about that later), but those paragraphs never mention the wet-and-dry operations, the rail load-out facilities, or the over-land conveyer. So, I can understand a few of the majority opinion's concerns.
¶111 That said, the complaint does give a plain and short statement of the facts of the transaction which, with reasonable inferences from the complaint, establish that the landowners have stated a valid cause of action for private nuisance. I will now review the complaint in more detail.
¶112 Paragraph 8 states that the proposed mine site and wet-and-dry operations will operate twenty-four hours a day, seven days a week, and AllEnergy's answer admits that. Paragraph 18 alleges *484 that AllEnergy has expressed its intention to proceed with the frac-sand mine project, and AllEnergy admitted in its answer that it plans to proceed with the project. As a result, a reasonable inference from those paragraphs and paragraph 7 (regarding where the mine will be in relation to the landowners' property) is *180 that AllEnergy plans to proceed with a frac-sand mine on land next to the landowners' homes.[12]
¶113 The complaint states that frac-sand mines and rail load-out facilities "are known to create nuisance conditions, including, but not limited to" numerous problems including toxic air pollution, water pollution, noise pollution, light pollution, ground disruption, depletion of groundwater, traffic congestion and loss of property values. Those stated problems without a doubt meet the definition of "disturbance of the landowners' interest in the real estate," and the definition of "harm," mentioned earlier regarding a claim for private nuisance. Granted, that paragraph does not state to a "certainty" or that it is "inevitable and undoubted" that certain things will happen, but, as already discussed, the standards cited by the majority opinion are not the standards required by Wisconsin law.
¶114 A complaint with a cause of action for private nuisance based on negligence need only have reasonable inferences that the landowners will be able to show at trial, by a preponderance of the evidence, that a cause of the proposed harm is AllEnergy's negligent conduct. Those are reasonable inferences which can be drawn from the allegations of the complaint and, importantly, from the remaining allegations of the complaint which are quoted but not considered by the majority opinion, and I will now discuss those paragraphs.
¶115 Paragraph 10 states that "this mine as contemplated would unreasonably interfere with the *181 rights of these Plaintiffs to the quiet and peaceful use and enjoyment of their rights." The next paragraph states that "[t]his mine" would be offensive to landowners as it would be to any person of ordinary and normal sensibilities in Plaintiffs' circumstances, and it would endanger "health, safety and welfare." Paragraph 12 states that "[t]he anticipated construction and operation of this frac-sand mine would be an invasion of and interference with Plaintiffs' interest in the private use and enjoyment of their lands." Paragraph 13 states that "[t]he anticipated construction of this site would result in significant harm, and would be intolerable." Paragraph 14 alleges that the proposed actions of AllEnergy "would constitute a lack of ordinary care and create an unreasonable and unnecessary invasion and interference with Plaintiffs' use and enjoyment of their properties." Paragraph 15 then mentions that the "negligence of the Defendant" would be "a direct cause of the private nuisance and resultant harm Plaintiffs would suffer." Paragraph 16 alleges that "such a mine, as is proposed by the Defendant" would create a private nuisance and would interfere with the interests of the Plaintiffs in their real estate.
¶116 The various parts of the landowners' complaint must not be reviewed in isolation. I conclude that the problems "known" in paragraph 9 must be inferred to be part of the harm which will occur as alleged in paragraphs 10 through 16 just mentioned. The complaint should be reasonably read to state that, because this is a *485 proposed frac-sand mine and those types of mines have problems which will invade the landowners' rights in their property, the mine will constitute a private nuisance.
¶117 The majority opinion focuses on perceived deficiencies in paragraph 9 because that paragraph *182 speaks about what frac-sand mines are "known" to do. But, of course, the majority opinion is based on an incorrect standard of Wisconsin law, and there is no requirement that the complaint be stated to a level of "necessarily," "certainly," "inevitable," or "undoubted." More importantly, any potential failure of paragraph 9 does not mean that all the other allegations of the landowners' complaint are pulled into any perceived insufficiency of paragraph 9. The insufficiency of one part of a complaint does not mean that all parts of the complaint are insufficient. See WIS. STAT. § 802.02(5)(b).[13]
¶118 I conclude, from the reasonable inferences drawn from the complaint and the specific allegations of the complaint, that the landowners' complaint states a cause of action for private nuisance under the requirements of WIS. STAT. ch. 802.
¶119 Beyond that, the specific pleading requirements in WIS. STAT. ch. 844 apply rather than the pleading requirements in Chapter 802. The requirements of the complaint under WIS. STAT. § 844.16 only require that the complaint "shall indicate each plaintiff's interest" (the complaint does), and "the nature of the alleged injury" (it does that, too). Also, it is certainly not required under § 844.16 to have allegations that some act or harm will "necessarily" or "certainly" or "inevitably and undoubtedly" occur.
¶120 For those reasons, I conclude that the complaint states a claim upon which relief can be granted.
*183 D. A Remedy Need Not Be Pled.
¶121 Another point confirms my concerns about the majority opinion reasoning.
¶122 As noted, the Wergin case relied on by the majority opinion concerns the level of proof required ninety-five years ago to obtain an injunction in similar circumstances. As a vital part of its analysis, the majority opinion morphs that level of proof requirement into a pleading requirement for the landowners' complaint.
¶123 The majority opinion, Majority, ¶28, contends that "what the plaintiff must prove also tells us what must be pled. See Data Key , 356 Wis.2d 665, ¶ 2, 849 N.W.2d 693." The majority opinion derives that conclusion from a phrase in Data Key Partners which states, "substantive law drives what facts must be pled." Majority, ¶28. I do not agree with the conclusion drawn from Data Key Partners . Our supreme court tells us that "substantive law drives what must be pled." The majority opinion then substitutes the phrase "what the plaintiff must prove" for the phrase "substantive law" in determining "what must be pled." However, "substantive law" and "what the plaintiff must prove" are not synonymous. Many things are required to be proved in an evidentiary record at a trial that need not be in a complaint (the basis for an expert witness opinion is one example, of many). Moreover, the Wisconsin Supreme Court said in Data Key Partners that "substantive law drives what facts must be pled." Data Key Partners , 356 Wis.2d 665, ¶ 2, 849 N.W.2d 693. The court did not hold that all substantive law *486 applicable to a cause of action must be contained in a complaint to survive a motion to dismiss. *184 ¶124 In addition, we have previously held that, in the context of a motion to dismiss, it is not necessary to plead the requirements for injunctive relief in a complaint involving real property interests. A plaintiff is "not required to prove at the pleading stage that no adequate legal remedy exists." Kohlbeck v. Reliance Constr. Co. , 2002 WI App 142, ¶ 2, 256 Wis.2d 235, 647 N.W.2d 277.[14]
¶125 This court held:
[W]e disagree that the Kohlbecks' suit must be dismissed at the pleading stage because they have failed to show an injunction is necessary to prevent future injury or that they have no adequate remedy at law. The Kohlbecks must be given an opportunity to prove that an injunction is necessary to prevent future harm; they were not required to do this in their complaint.
Id. , ¶ 15. I suggest that is yet another reason the landowners' complaint is sufficient pursuant to Wisconsin law.
CONCLUSION
¶126 For those reasons, I respectfully dissent.

AllEnergy cross-appeals, arguing that the matter is not ripe for adjudication. We fail to see why AllEnergy needed to file a cross-appeal to raise lack of ripeness as an alternative reason to affirm. Regardless, we do not address ripeness because we conclude that, regardless of ripeness, dismissal was proper based on the landowners' failure to state a claim. See Barrows v. American Family Ins. Co. , 2014 WI App 11, ¶ 9, 352 Wis.2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Two housekeeping points:
First, we use the term "anticipated" nuisance but note that synonymous terms include "threatened" nuisance, "prospective" nuisance, and "anticipatory" nuisance. See Wergin v. Voss , 179 Wis. 603, 606, 192 N.W. 51 (1923) ; 66 C.J.S. Nuisances § 36, at 634 (2009).
Second, we focus here on anticipated private nuisance, the only type of anticipated nuisance claim the landowners assert they have alleged, but note that the most pertinent Wisconsin case also contemplates anticipated public nuisance claims. See Wergin , 179 Wis. at 606, 192 N.W. 51.

All references to the Wisconsin Statutes are to the 2015-16 version.

The dissent appears to conclude, without quite saying so, that the supreme court has overruled aspects of Wergin that we rely on today. The dissent also repeatedly refers to the age of Wergin as if to suggest that age alone undercuts the precedential value of the decision. However, we find nothing in the dissent demonstrating that subsequent developments in Wisconsin law undercut these aspects of Wergin . The law addressing private nuisance that the dissent does discuss admittedly develops private nuisance law in certain respects, but not in ways that conflict with Wergin .
The dissent erroneously states that "the majority opinion necessarily takes the position that developments in nuisance law over the last ninety-five years, including adoption of significant parts of the Restatement (Second) of Torts by the Wisconsin Supreme Court, apply to all aspects of nuisance law-except the one area mentioned in Wergin that the majority opinion proposes is a cause of action for 'anticipated private nuisance.' " Dissent, ¶44; see also Dissent, ¶67. Nothing in our opinion suggests that developments in the law pertinent to anticipated private nuisance claims should be ignored.

Notably, the dissent also appears to find the Restatement language lacking. In paragraph 72 of the dissent, the author lists the elements applicable here using "will" instead of "is." The dissent's "will" language seemingly does at least some of the same work as the Wergin requirements that we conclude apply here.

We are uncertain what the dissent means to say about our reliance on the " 'who, what, where, when, why, and how' " language in Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 21 n.9, 356 Wis.2d 665, 849 N.W.2d 693 (quoted source omitted). The dissent seems to suggest that a plaintiff need not include specifics in a complaint, but rather that a complaint will only be dismissed for failing to state a claim " 'if it appears to a certainty that no relief can be granted under any set of facts that the plaintiff can prove in support of [his] allegations.' " Dissent, ¶102 (quoting Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee Cty. , 2016 WI App 56, ¶ 5, 370 Wis.2d 644, 883 N.W.2d 154, which, in turn, quotes Strid v. Converse , 111 Wis.2d 418, 422, 331 N.W.2d 350 (1983) ). We are uncertain what this often-repeated language means in practice or how it might undercut our understanding of Data Key Partners . We discuss the matter no further.

The dissent apparently disputes our view that, in deciding what must be pled in a complaint, courts look to the substantive law governing what a plaintiff must prove in order to prevail at trial. Dissent, ¶¶45, 123. However, it is beyond dispute that, when assessing whether a complaint states a claim, courts routinely look to case law setting forth the elements that must be proved. Indeed, in this context, courts sometimes expressly speak in terms of what a plaintiff must prove. See, e.g. , John Doe 67C v. Archdiocese of Milwaukee , 2005 WI 123, ¶¶ 19, 21, 33-34, 43-44, 284 Wis.2d 307, 700 N.W.2d 180 (when determining whether a complaint stated a claim for negligent supervision, court looked to what facts claimant "would have to prove at trial" to determine whether complaint allegations were sufficient); Buckett v. Jante , 2009 WI App 55, ¶ 10, 316 Wis.2d 804, 767 N.W.2d 376 (when determining whether a complaint stated a claim for unjust enrichment, the court looked to the elements "the plaintiff must prove"). Accordingly, our approach here is unremarkable. We look to the most specific case law we have identified to determine what the landowners must prove in order to properly assess the sufficiency of the allegations in their complaint.

The dissent lists its take on the required elements of a private nuisance claim, Dissent, ¶72, and then seems to suggest that our opinion tells readers that the requirements we list in the text above are the only allegations or elements required for an anticipated private nuisance claim, Dissent, ¶73. This is not a fair reading of our opinion. We do not dispute that there are additional requirements, such as alleging facts showing intentional and unreasonable or otherwise actionable conduct. See Bostco LLC v. Milwaukee Metro. Sewerage Dist. , 2013 WI 78, ¶ 31, 350 Wis.2d 554, 835 N.W.2d 160. We focus on the elements the parties dispute here.
More generally, we do not address several aspects of nuisance law because they are not at issue here. For example, we do not address the required nature of defendant's conduct in nuisance cases. See id. (conduct must be " 'intentional and unreasonable' " or " 'otherwise actionable' " under law governing negligent or reckless conduct). We do not suggest, as the dissent asserts, that "any type of 'conduct' is enough, regardless of whether it was actionable or negligent." Dissent, ¶79.

We note that the landowners' complaint might have been more clear had they labeled their first "claim for relief" "anticipated nuisance" or a similar label, rather than simply using "private nuisance" language. However, we do not rely on this lack of clarity in labeling because "when a court analyzes a complaint to determine whether it states a particular claim for relief, the label given the claim in the complaint is not dispositive." See Burbank Grease Servs., LLC v. Sokolowski , 2006 WI 103, ¶ 45, 294 Wis.2d 274, 717 N.W.2d 781.
We further note that, although the landowners labeled additional "claims for relief" for "declaratory judgment" and "perpetual injunction," those claims for relief, as alleged, rise or fall on the underlying allegations of anticipated private nuisance. Thus, we do not separately address the "declaratory judgment" and "perpetual injunction" claims for relief.

We comment here on the dissent's reliance on Wis. Stat. ch. 844, including its assertion that the pleading requirement in ch. 844, not ch. 802 and Data Key Partners , applies here. Dissent, ¶¶107-08, 119.
First, although mentioned in the complaint, the parties do not discuss ch. 844 and, thus, do not discuss why it might matter here.
Second, the import of the case law discussing ch. 844 is unclear, at least as that chapter might apply to the complaint in this case. The case law tells us that ch. 844 does not create a cause of action, but rather is a " 'remedial and procedural statute.' " Schultz v. Trascher , 2002 WI App 4, ¶ 27, 249 Wis.2d 722, 640 N.W.2d 130 (2001) (quoting Shanak v. City of Waupaca , 185 Wis.2d 568, 596, 518 N.W.2d 310 (Ct. App. 1994) ). But we find no clear statement that compliance with the ch. 844 pleading requirements is sufficient in all private nuisance claim situations. The court in Prah v. Maretti , 108 Wis.2d 223, 321 N.W.2d 182 (1982), for example, found it unnecessary to even mention ch. 844 in its discussion of whether a private nuisance claim should survive a summary judgment analysis, including whether the complaint stated a claim. See id. , at 227-43, 321 N.W.2d 182.
Third, even if we assumed that a complaint satisfying Wis. Stat. § 844.16 states a claim, we would find the complaint here lacking. Section 844.16 requires allegations showing "the nature of the alleged injury." To have meaning, this requirement, at a minimum, must mean that a complaint needs to identify the injury the plaintiff contends he or she has, is currently, or will suffer. But, in this regard, all that the complaint states is that frac sand mining operations "are known to create" a long list of injuries, including "air-pollution," "water pollution," "light pollution," ground "vibration," the "destruction of agricultural and forested lands," an "adverse impact" on "endangered species" including a particular type of butterfly, the "depletion of ground water," and "road damages." This laundry list of possible injuries is defective in two ways, even under § 844.16. The complaint does not allege that all frac sand mining operations cause injuries to all neighboring properties, and it does not allege which of these many injuries might, under the circumstances here, occur.

The majority opinion adopts this designation for the appellants, and I do the same.

I agree with the majority opinion that the question of whether the landowners' complaint states a valid cause of action should be analyzed by a review of the complaint only, and should not consider the affidavits proffered by the landowners. Majority, ¶9.

In its Memorandum Decision and Order granting the motion to dismiss, the circuit court referred to the landowners' cause of action as a "private anticipatory nuisance claim" and at another point as "anticipatory nuisance." Other times, the circuit court referred to the landowners' cause of action simply as "private nuisance." It is frustrating that the parties, at certain points, have referred to "anticipatory private nuisance" as a separate cause of action. However, for clarity, so as not to cause confusion in Wisconsin law, and to avoid any parties attempting to plead or prove a cause of action which is not recognized in Wisconsin, these issues must be carefully reviewed regardless of any inexact references by the circuit court and the parties.

There may be another one, too. If there is "anticipated private nuisance," it follows that there should also be "anticipated public nuisance."

While those were the standards regarding proof for a certain type of permanent injunction ninety-five years ago, those standards are not in place today, as will be discussed later.

In light of the allegations in the complaint regarding only negligent conduct of AllEnergy, and for ease of reading, portions of Restatement (Second) of Torts , § 822 ( Am. Law Inst . 1979) which concern intentional conduct, reckless conduct, and "abnormally dangerous conditions or activities" have been removed from the quote.

As to this element and others, the majority opinion recognizes in response to this dissent that there is case law more recent than Wergin v. Voss , 179 Wis. 603, 192 N.W. 51 (1923), which contains "additional requirements," but the majority opinion does not address how those requirements interact with the majority opinion's holding.

To add another aspect to the majority opinion, while the elements mentioned in the majority opinion, at paragraph 29, mention "harm," that word is not used in Wergin . Instead, that opinion uses the word "injury" as would be appropriate in any analysis regarding an injunction. Wergin , 179 Wis. at 606-07, 192 N.W. 51. Indeed, Wergin uses the phrase "irreparable injury" in its analysis. Id. at 606, 192 N.W. 51 (citing Adams v. Michael , 38 Md. 123 (1873) ). Nonetheless, because the majority opinion uses the word "harm," it is appropriate to discuss that term.

The landowners' complaint alleges that one basis for the private nuisance claim is Wis. Stat. ch. 844. The majority opinion does not discuss that basis for the cause of action but, regardless, this court has previously concluded that Chapter 844 "does not purport to create a cause of action." Shanak v. City of Waupaca , 185 Wis.2d 568, 596, 518 N.W.2d 310 (Ct. App. 1994). However, the provisions of Chapter 844 have been recognized by Wisconsin courts as speaking to abatement of a private nuisance in remedial and procedural senses. Those provisions of Chapter 844 will be mentioned later in this dissent.

Part of the burden of proof is the burden of persuasion which imposes the burden "of actually convincing the trier of fact of the existence of some factual proposition. The burden of persuasion is indexed to the level of proof required at the particular trial or hearing." 7 Daniel Blinka, Wisconsin Practice: Evidence § 301.1 (4th ed. 2017).

Wisconsin Stat. § 844.01 states, in relevant part:
(1) Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief.
(2) Physical injury includes unprivileged intrusions and encroachments; the injury may be surface, subsurface or suprasurface; the injury may arise from activities on the plaintiff's property, or from activities outside the plaintiff's property which affect plaintiff's property.
(3) Interference with an interest is any activity other than physical injury which lessens the possibility of use or enjoyment of the interest.

For the reasons mentioned, I would reach the ripeness question mentioned in footnote 1 of the majority opinion, and conclude that this matter is ripe for adjudication. Like the majority opinion, I also fail to see why AllEnergy needed to file a cross-appeal in order to raise ripeness as an issue.

Wisconsin Stat. § 802.02(5)(b) states in relevant part: "When 2 or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements."

Judge Lundsten was a part of the unanimous panel in Kohlbeck v. Reliance Const. Construction , 2002 WI App 142, 256 Wis.2d 235, 647 N.W.2d 277.